[No. 7,090.—In Bank.]

## THE PEOPLE EX REL. BECKWITH v. THE BOARD OF EDUCATION OF OAKLAND ET AL.

TEXT BOOKS—COMMON SCHOOLS—CONSTITUTIONAL LAW—REPEAL OF STATUTE. Section 7, art. ix, of the Constitution, providing that " the local Boards of Education, and the Boards of Supervisors and County Superintendents of the several counties which may not have County Boards of Education, shall adopt a series of text-books for the use of the common schools within their respective jurisdictions," is self-executing, and operated as a repeal of the Act of December 13th, 1875, which provided that the text-books in use in the years 1873-4-5 should be continued in use until otherwise provided by statute. °

ID.—LOCAL BOARDS OF EDUCATION—DEFINITION.—Each Board of Education, whether of a city and township, or county, is local as to the territory of its jurisdiction, and where portions of a county are subject to local boards, the County Board is local as to the balance of the county.

ID. — COMMON SCHOOLS — CONSTITUTIONAL LAW—COUNTY SUPERINTENDENT — BOARDS OF SUPERVISORS.—A question stated as to how the powers of the County Superintendents and Boards of Supervisors are to be executed, in cases where the selection of the text-books devolves upon them; and *held*, that as to such cases, the section may not be self-executing, and we might thus have a section self-executing as to one class of officers, and not so as to another.

APPLICATION for a writ of mandamus.

The facts are stated in the opinion.

*A. L. Hart*, and *A. A. Cohen*, for Appellant.

Section 7, art. ix, of the new Constitution is not self-executing. The entire article needs legislation before it can go into effect. (*Myers* v. *English*, 9 Cal. 341; *People* v. *Lake Co.* 33 id. 487; *Ex parte Wall*, 48 id. 318; *Williams* v. *Mayor of Detroit*, 2 Mich. 563; *French* v. *Teschemaker*, 24 Cal. 518; Const.

of Va. § 3, art. iii ; *Cahoon v. The Commonwealth,* 20 Grat. 733 ; *Supervisors of Doddridge* v. *Stout,* 9 W. Va. 705 ; Const. of Penn. § 1, art. xi ; *Lehigh Iron Co.* v. *Lower Macungie,* 81 Penn. St. 482 ; *State of Missouri* v. *Macon Co. Court,* 41 Mo. 453 ; *Allyber* v. *The State,* 10 Ohio St. 589 ; *State* v. *Barbee,* 3 Ind. 258 ; *State of Kansas* v. *Thompson,* 2 Kans. 432.) Article ix is intended to furnish a new system to be operative in the future, and to apply to all public schools in the State ; and the local board, which is to administer this article, is a board which shall constitute a part of the school system which the Legislature is empowered to provide. We cannot now tell what the local educational authority of the city of Oakland will be, when the Legislature has done its part. If the action of the present board is sustained, then the new board, which the Legislature is authorized to create, cannot act for four years ; and the Legislature is thus deprived of the power conferred upon it to adopt—after informing itself as to the requirements of the educational interests of the State—a full and complete system.

*Geo. L. Morgan,* for Respondent.

The board acted within its authority, because § 7 of art. ix, of the new Constitution, is self-executing.

The rule : "A constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right give nmay be enjoyed and protected, or the duty imposed may be enforced." (Cooley's Const. Lim. 4th ed. p. 101 ; *State* v. *Holliday,* 64 Mo. 526 ; *St. Joseph Schools* v. *Patterson,* 62 id. 444 ; *State* v. *Weston,* 4 Neb. 216 ; *Beecher* v. *Baldy,* 7 Mich. 498 ; *Thomas* v. *Owens,* 4 Md. 189 ; *Hills* v. *Chicago,* 60 Ill. 91 ; *People* v. *McRoberts,* 62 id. 42 ; *Hyatt* v. *Allen,* 54 Cal. 353 ; *People* v. *Rumsey,* 64 Ill. 44 ; *Chance* v. *Marion Co.* id. 66 ; *O'Connor* v. *Leddy,* id. 299.)

" So far as any distinct provision is made which by itself is capable of enforcement, it is law." (Cooley's Const. Lim. p. 101.) Examples — affirmative provision : *People* v. *Rumsey,* 64 Ill. 44 ; *Chance* v. *Marion Co.* id. 66 ; *O'Connor* v. *Leddy,* id. 299 ; *State ex rel. Roberts* v. *Weston,* 4 Neb. 216 ; *Thomas* v. *Owen,* 4 Md. 190 ; *People* v. *McRoberts,* 62 Ill. 38 ; *Hyatt* v. *Allen,* 54 Cal. 353.

Myrick, J.:

This is an application for a writ of mandate directing the respondents to use and cause to be used in the public schools of the city of Oakland the text-books known as the McGuffey series of Readers.

The facts upon which the application is based are as follows : During the years 1873, 1874, and 1875, and thence continuously until January 17th, 1880, the McGuffey series of Readers were by law in general use in the public schools of said city. At a meeting of the Board of Education of said city, held January 17th, 1880, the said board determined and resolved to adopt and introduce into general use as text-books in all the public schools of said city, the text-books known as the Appleton series of Readers, in lieu and in place of the McGuffey series of Readers ; which said resolution has been enforced, and ever since said day, said Appleton series of Readers has been continuously and is used in said city, in lieu and in place, and to the exclusion, of said McGuffey's series of Readers.

The law under which the application for the writ is made is as follows :

By the Acts of March 14th, 1868, (Stat. 1867–8, p. 161) and March 1st, 1872, (Stat. 1871–2, p. 174) it was provided that the Board of Education of the city of Oakland shall have sole power to determine what text-books shall be used in the schools of that city. By an amendment to § 1521, Political Code, in effect from March 13th, 1874, the State Board of Education was given the power to " prescribe and enforce the use of a uniform series of text-books in the public schools, except in the City and County of San Francisco." By the Act of December 13th, 1875, (Stat. 1875–6, p. 1) it was provided that " the text-books in use in the public schools during the years 1873–4–5, shall be continued in use in all the public schools of this State, until otherwise provided by statute."

The respondents rely upon § 7, art. ix, of the new Constitution, claiming that it is self-executing, and that local boards have the right under it to adopt a series of text-books to be used within their respective jurisdictions. The section is as follows : " The local Boards of Education, and the Boards of Supervisors, and

County Superintendents of the several counties which may not have County Boards of Education, shall adopt a series of text-books for the use of the common schools within their respective jurisdictions. The text-books so adopted shall continue in use for not less than four years. They shall also have control of the examination of teachers, and the granting of teachers' certificates, within their several jurisdictions."

Several portions of article ix are not self-executing; for instance, § 5: "The Legislature *shall provide* for a system of common schools, by which a free school shall be kept up and supported in each district, at least six months in every year"; and at least part of § 6, which provides that the public-school system shall include such schools as *may be* established by the Legislature, etc. Here, action by the Legislature may be necessary to give force and effect to the provisions. But it requires no legislation to give force to the last clause of § 6, namely, that "the entire revenue derived from the State school fund and the State school tax shall be applied exclusively to the support of primary and grammar schools." Section 8 requires no legislation to enforce it, namely, that "no public money shall ever be appropriated for the support of any sectarian or denominational school," and that no sectarian or denominational doctrine shall be taught in any of the common schools of the State. Neither does § 9 require legislation, that "the University of California shall constitute a public trust"; and that "no person shall be debarred admission to any of the collegiate departments of the University on account of sex."

Thus it will be seen that there are parts of article ix which are self-executing, and that the system of common schools, for which the Legislature is to provide, does not embrace all matters referred to in the entire article. Let us see whether the section in question (§ 7) is self-executing. "The local Boards of Education * * * shall adopt a series of text-books," etc. There are local Boards of Education existing in this State, and their existence is here recognized, and reference is here made to them, as well as to such as may hereafter be created by the Legislature.

Section 1 of the Schedule provides, "that all laws in force at the adoption of this Constitution, *not inconsistent therewith,*

shall remain in full force and effect," etc. The Act of December 13th, 1875, provided that the text-books in use in 1873-4-5 shall be continued in use until otherwise provided by statute. The new Constitution, which is, of course, above the statute, says that the *local boards* shall adopt a series of text-books. Here, then, clearly seems to be a power given. It does not say, "in such manner as the Legislature *may* prescribe," but the local board *"shall adopt."* And the power thus given is inconsistent with the former statute; or, rather, that statute is inconsistent with the power given, and must yield precedence. It might very well be asked : What action of the Legislature is necessary to set this section in operation? Possibly the Legislature may prescribe rules by which boards shall be governed in selecting books, viz., to give notice, or to have the matter considered at some meeting called for the purpose, or other rule of machinery merely; but such legislation could not be used to take away the right of ultimate selection. Nor could the Legislature, by non-action, (even if so disposed) postpone or defeat the right or power of the boards to select. If it cannot postpone for ten years, how can it for thirty days? Evidently, in view of the legislation theretofore had, the people, in adopting the new Constitution with the provision in question in it, intended to localize the selection of text-books, and authorize the selection to be made according as the tastes, or wishes, or judgment of officers in different counties should determine to be for the best interests of education. The people of Sacramento County may prefer one set of books; of Siskiyou, another; of Los Angeles, another; of San Francisco, yet another. The evident object of the Constitution was to allow the exercise of such preference. The provisions of the new Constitution being mandatory, we do not see how the words "shall adopt" can be held to attend upon future legislation.

Some doubt has been suggested as to the meaning of the phrase "the local Boards of Education"; that is, does the phrase mean County Boards only, or does it include a board having jurisdiction over a portion of a county, as of a city or township? It was suggested that in Alameda County, for instance, there might be a general board for the county, a board for the city of Oakland, and a board for some particular town-

ship; in such case, which board would have authority to select text-books, and for what territory? We are of opinion that the phrase "local board" would apply to the territory over which it exercises jurisdiction as a board. The section says, "within their respective jurisdictions." Each board, whether of a city, township, or county, is local as to the territory of its jurisdiction. The board in a city is local as to the city; the board of a township is local as to the township, and the board of a county is local as to the county; and where portions of a county are subject to local boards for such portions, the County Board is local as to the balance of the county.

Another point is suggested in reference to which some difficulty arises, and, although that point is not necessarily involved in the decision of the case before us, we will refer to it. In counties or parts of counties not within the jurisdiction of a local Board of Education, the County Superintendent and the Board of Supervisors are to adopt the text-books. The Supervisors have machinery for their meetings, and the Superintendents have machinery for their transactions; but where they are to act in concert, what machinery is to direct such action? Who is to record its proceedings? How is the voting to be had, whether by the Supervisors as a unit, or each to have a vote? If as a unit, and they differ from the Superintendent, who is to decide? Very likely, as to such cases, the section may not be self-executing. If so, we might have, arising from incompleteness, a section self-executing as to one class of officers, and not self-executing as to another. As to Boards of Education, the objections above noted do not apply; because they already have machinery for meeting, voting, and recording proceedings.

It has been urged that it could not have been intended that a Board of Education could, without notice, at any meeting, transact such important business as that of selecting a series of text-books for the public schools, the books thus selected to be used four years without change, no matter what change might occur in the wishes of the board or the people, and no matter what change might occur in the prices to be demanded for the books. We can only say that all those matters were doubtless in the minds of the people in adopting the Constitution, and that

we must take the instrument as it is, giving to it such construction as its language will fairly and reasonably import, leaving its correction, if it should be found to need any, with that power which alone has authority to change or modify it.

It was conceded on the argument that the relator was a proper person to make the application, and that the writ of mandate is the proper remedy; therefore we express no opinion in relation to these points.

We deem it proper to say, that at the time the facts of this case arose, there had been no action by the Legislature in regard to the subject, under the new Constitution; and the fact of such non-action is deemed by us a material ingredient in reaching the conclusions above indicated. If the power to select books depended upon legislative action, non-action as to the mode might have defeated the exercise of the power.

The alternative writ heretofore issued is dissolved, and the application for a peremptory writ is denied.

SHARPSTEIN, J., McKINSTRY, J., and THORNTON, J., concurred.

McKEE, J., concurred in the judgment.

---

| 55 | 337 |
| 92 | 563 |

| 55 | 337 |
| 113 | 171 |

| 55 | 337 |
| 128 | 328 |