[Civ. No. 40846. First Dist., Div. One. Apr. 21, 1978.]

CARL FLOOD, Plaintiff and Appellant, v.
JAMES A. RIGGS, as Registrar of Voters, etc., et al.,
Defendants and Respondents.

**COUNSEL**

Peter E. Sheehan, Clifford C. Sweet, Charles C. Marson, Evelyn Frank and Henry Hewitt for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Clayton P. Roche, Deputy Attorney General, Richard J. Moore, County Counsel, James E. Jefferis, Assistant County Counsel, and Adam S. Ferber, Deputy County Counsel, for Defendants and Respondents.

## OPINION

RACANELLI, P. J.—Appellant[1] sought a writ of mandamus directing respondent Riggs, Registrar of Voters of the County of Alameda, to register himself and "all ex-felons currently on parole" (excluding those convicted of Elections Code felonies) otherwise qualified to vote. Upon respondent Riggs' motion for compulsory joinder (Code Civ. Proc., § 389, subd. (a)), the trial court joined as parties respondents Secretary of State and Adult Authority of the State of California. The cause was submitted for decision on the pleadings and certain stipulated facts. On appeal from the judgment denying the petition, appellant challenges the validity of a uniform policy of "blanket disfranchisement of paroled ex-felons"[2] as implemented by respondents, contending such policy is neither constitutionally required nor authorized by the Elections Code. Upon analysis of the history and purpose of the relevant provisions of the California Constitution and Elections Code, we have concluded that a convicted felon is ineligible to exercise the voting franchise during the term of his parole under the self-executing provisions of article II, section 4, of the California Constitution; further, that the several implementing provisions of the Elections Code inconsistent with that constitutional mandate are invalid.

The underlying facts are not in dispute.

In March 1976, appellant, a resident of the County of Alameda otherwise qualified to register as an elector, was refused permission by respondent Riggs to complete an affidavit of registration on the basis of his uncompleted parole[3] granted after serving a prison term of eight

---

[1]Appellant purported to file his petition as a class action on behalf of himself and all paroled felons similarly situated. However, the trial court made no determination of the appropriateness of a class action. (Code Civ. Proc., § 382; see *City of San Jose* v. *Superior Court* (1974) 12 Cal.3d 447, 453-454 [115 Cal.Rptr. 797, 525 P.2d 701, 76 A.L.R.3d 1223]; see generally 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, §§ 178-181, pp. 1850-1854.) Accordingly, we treat the matter on appeal as one on behalf of appellant individually. In light of our decision herein, we assume that general principles of stare decisis will compel uniform application of the constitutional standard relating to any paroled felon's right of suffrage.

[2]In his briefs appellant consistently refers to a paroled felon as a "paroled ex-felon." In order to avoid any confusion of terms herein, we adopt and employ the commonly accepted definition of "ex-felon" to mean a person previously convicted of a felony who is no longer serving either a term of. imprisonment or a period of parole by reason of such conviction. In that context an "ex-felon" means a fully discharged or fully released felon.

[3]It was stipulated that appellant is not scheduled to be discharged from parole until 1982.

years in the State of Missouri following his felony conviction of armed robbery. In its findings of fact, unchallenged on appeal, the trial court determined that respondent Riggs acted pursuant to a policy denying the franchise "to all felons who have not completed their terms of parole" in accordance with a "uniform statewide policy" effectively set by the opinion of respondent Secretary of State, as chief elections officer of the state (see Elec. Code, § 55), that paroled felons are ineligible to vote by virtue of article II, section 3, of the California Constitution. (Secretary of State Opn. 76-SOS 3 (1976).)

■ The basic question presented is whether a paroled felon is disfranchised under article II, section 3, of the California Constitution, as amended in 1974 (renumbered in 1976 as art. II, § 4), which reads as follows: "The Legislature shall prohibit improper practices that affect elections and shall provide for the disqualification of electors while mentally incompetent or imprisoned or on parole for the conviction of a felony."

The answer to this inquiry necessitates a review of the history of the relevant constitutional enactments and implementing legislation.

For well over a century the California Constitution had permanently disfranchised all persons "convicted of any infamous crime." (Art. II, § 5 (1849 Constitution); adopted in 1879 as art. II, § 1, and amended to deny the right of suffrage also to persons "convicted of the embezzlement or misappropriation of public money . . . ." (1879 Constitution).) Since its first regular session, the Legislature has exercised its constitutional authority[4] to implement the voting disqualifications prescribed by the Constitution. (See *Otsuka* v. *Hite* (1966) 64 Cal.2d 596, 607-608 [51 Cal.Rptr. 284, 414 P.2d 412].)[5] Until 1966, the disqualifying language

---

[4]Article XX, section 11, then provided: "Laws shall be made to exclude from office, serving on juries, and from the right of suffrage, persons convicted of bribery, perjury, forgery, malfeasance in office, or other high crimes. The privilege of free suffrage shall be supported by laws regulating elections and prohibiting, under adequate penalties, all undue influence thereon from power, bribery, tumult, or other improper practice."

[5]For our discussion it is only necessary to review the relevant legislative provisions as they existed immediately before the landmark holding in *Otsuka* v. *Hite, supra,* 64 Cal.2d 96, discussed *infra.*

The pertinent Elections Code sections (enacted by Stats. 1961, ch. 23, § 3) then provided for execution of a prescribed statutory form of affidavit of registration (§ 321), averring that affiant was not disqualified to vote "by reason of a felony conviction" (§ 310, subd. (h)); for cancellation of such registration by the county clerk upon certification of an existing judgment of conviction of "any infamous crime" or embezzlement or misappropriation of any public money (§ 383, subd. (c)); and for oral

"infamous crime" was judicially interpreted to include conviction of *any* felony. (See *Stephens* v. *Toomey* (1959) 51 Cal.2d 864 [338 P.2d 182]; *Matter of Application of Westenberg* (1914) 167 Cal. 309, 319 [139 P. 674]; *Truchon* v. *Toomey* (1953) 116 Cal.App.2d 736 [254 P.2d 638, 36 A.L.R.2d 1230].) Thus, on the eve of our Supreme Court's benchmark decision in *Otsuka* v. *Hite, supra,* 64 Cal.2d 596, all convicted felons were constitutionally disfranchised and the privilege of suffrage was further expressly denied by legislative enactments to those imprisoned or on parole. (See former Pen. Code, §§ 2600 and 3054.)[6]

In *Otsuka* the court examined the validity and scope of the disqualifying language contained in former article II, section 1, of the Constitution. The court was there confronted with the issue whether persons convicted of a federal crime (Selective Service Act violations) and *who had already served a term of imprisonment and were duly released,* were convicted of an "infamous crime" within the disfranchisement language of former article II, section 1, of the Constitution. In determining that the constitutional prohibition, consistent with equal protection demands, was validly directed only to "conviction of crimes involving moral corruption and dishonesty . . . [constituting] a threat to the integrity of the elective process" (*Otsuka* v. *Hite, supra,* 64 Cal.2d at p. 599), the majority opinion acknowledged that the state's interest in preserving the purity of the ballot box could demonstrate a compelling interest justifying an appropriate restriction on the fundamental right of suffrage. (See *Otsuka,* at pp. 602-603, 606.) It concluded that by limiting the constitutional classification to crimes which in nature posed a threat to the elective process, such interpretation was "sufficiently narrow in scope to with-

challenge of the voter upon the grounds of conviction of "any infamous crime" (§ 14240, subd. (g)), permitting proof thereof by an authenticated copy of the record or the oral testimony of two witnesses (§ 14246); see also §§ 389, 390 similarly enacted by Stats. 1961, ch. 23, § 3.)

See also Penal Code section 165 permanently disfranchising every person convicted of bribery.

[6]Penal Code sections 2600 (enacted 1941, repealed by Stats. 1975, ch. 1175, § 2, p. 2897) and 3054 (enacted 1941, repealed by Stats. 1977, ch. 165, § 56) then provided in relevant part as follows: Section 2600: "A sentence of imprisonment in a state prison for any term less than life suspends all the civil rights of the person so sentenced . . . during such imprisonment. But the Adult Authority may restore to said person during his imprisonment such civil rights as the authority may deem proper, *except the right to . . . exercise the privilege of an elector . . . .*" (Italics added.) (The words "less than life" were deleted by amendment in 1968 (Stats. 1968, ch. 1402, § 1, p. 2763).)

Section 3054: "The Adult Authority *may* permit paroled persons civil rights, *other than the right to . . . exercise the privilege of an elector,* during the term of such parole. . . ." (Italics added.)

stand ... challenge under the Fourteenth Amendment." (*Otsuka*, at p. 611.) Significantly, the court recognized that California had properly denied the right of suffrage to *imprisoned* felons under the provisions of former Penal Code section 2600 (*id.*, at p. 606, fn. 5) and that the scope of constitutional disqualification extended to convictions sustained in other jurisdictions as well. (*Id.*, at pp. 611-612, fn. 14.)

However, efforts to implement the *Otsuka* standard by local election officials determining eligibility of convicted ex-felons to vote produced widely mixed results.[7]

In an attempt to comply with the standard announced in *Otsuka*, the 1969-1970 Legislature enacted a series of amendments to the Elections Code[8] dealing with determination of voter eligibility of persons convicted of a felony. The amendments retained the authority of local election

[7]Appellant cites an official study undertaken in 1972 which revealed widely varied registration procedures and practices in the responding 47 counties: 3 counties registered only those pardoned or fully discharged; 26 counties determined eligibility based upon the specific offense or crime; 17 counties utilized a case-by-case approach, and only 1 county imposed no restrictions. (Appellant's conviction of robbery would have resulted in disqualification in nine counties and nondisqualification in four counties of those reported in the study.) (Voter Registration of Former Prisoners in Cal.; Cal. Department of Corrections, Bay Area Research Unit, Mar. 1974.) A more recent survey conducted by the California Secretary of State substantiated similar disparities in registration practices of local election officials throughout the state. (See *Richardson* v. *Ramirez* (1974) 418 U.S. 24, 33-34, fn. 12 [41 L.Ed.2d 551, 559, 94 S.Ct. 2655].)

[8]Section 310 (contents of affidavit of registration) was amended to read in pertinent part: "The affidavit of registration shall show: ... [¶] (i) Whether the affiant has been convicted of *a felony which disqualifies him from voting.* (Not all felony convictions disqualify him from voting.)" (Stats. 1970, ch. 148, § 1, pp. 392-393.)

Section 321 (form of affidavit), amended to conform with section 310, required the affiant's declaration that: "10. I have not been convicted of *a felony which disqualifies me from voting.* (Not all felony convictions will disqualify you from voting.)" (Stats. 1970, ch. 148, § 2, pp. 393-394; see also Stats. 1969, ch. 1543, § 2, p. 3138.)

Sections 321.5 and 321.7 were added by Statutes of 1970, chapter 148, sections 3-4, pages 394-395. Section 321.5 required in substance that, upon request, the county clerk shall determine whether a person has been convicted of "a felony which disqualifies him from voting," and—where such determination was unfavorable—shall inform that person of his right to file an action under section 350 (action to compel registration) for a judicial determination of his eligibility. Section 321.7 imposed a duty upon the deputy registrar in the specified case to furnish a printed statement to any affiant uncertain of his eligibility by reason of a felony conviction, advising that "not all felony convictions disqualify him from voting under the Constitution . . ." and that his eligibility would be determined by the county clerk, whose unfavorable determination was subject to judicial review under section 350.

Section 14240 (as amended by Stats. 1965, ch. 1908, § 1, p. 4417), providing for oral challenge at the polls upon the grounds "(g) That he has been convicted of *a felony*;" inexplicably remained unchanged. (Italics added.) (See also § 14246, as amended by Stats. 1965, ch. 1908, § 4, p. 4419.)

officials to determine initially whether the disclosed felony conviction was of a disqualifying nature, affording a process of judicial review of a determination of ineligibility. Despite such judicial and legislative narrowing of the class of *fully discharged ex-felons* subject to disqualification, statutory law continued to disfranchise those convicted of any felony while imprisoned or on parole in California. (See former Pen. Code, §§ 2600, 3054, fn. 6, *ante.*)

At the November 1972 general election, article II, section 1, was repealed and an essentially similar provision reenacted in newly adopted article II, section 3, which then read in relevant part as follows: "The Legislature shall prohibit practices that affect elections and shall provide that no . . . person convicted of an infamous crime, nor person convicted of embezzlement or misappropriation of public money, shall exercise the privileges of an elector in this state." The language of the new section declaring that the Legislature "shall provide" was soon interpreted as having "no difference in substance" from the former section which itself denied the right of suffrage to those convicted of an infamous crime, and as merely recognizing the authority long exercised by the Legislature to implement the voting disqualifications of the Constitution. (*Ramirez* v. *Brown* (1973) 9 Cal.3d 199, 204-205 [107 Cal.Rptr. 137, 507 P.2d 1345] (revd. *sub nom., Richardson* v. *Ramirez* (1974) 418 U.S. 24 [41 L.Ed.2d 551, 94 S.Ct. 2655]) (discussed, *infra*).)

Against this setting our high court in *Ramirez* v. *Brown, supra,* 9 Cal.3d 199,[9] undertook a penetrating reexamination of the constitutional viability of the standard contained in former article II, section 1, of the California Constitution (as amended and renumbered art. II, § 3 (1972)) in light of evolving equal protection principles since its decision in *Otsuka.* In analyzing an array of state and federal precedents dealing with the exercise of the fundamental right of suffrage, the court explicitly recognized that the test of constitutional validity of state-imposed restrictions on such right rested not only on the traditional showing of a compelling state interest but also upon a demonstrated necessity to promote that interest through the least burdensome alternatives possible. (*Ramirez, supra,* 9 Cal.3d at p. 207.) In reassessing the adequacy of its holding in *Otsuka,* the court reasoned that under contemporary equal protection standards disfranchisement solely by reason of conviction of

[9]The three individual petitioners were refused registration by county election officials solely by reason of prior felony convictions ranging from robbery by assault (in Texas) to forgery. Each petitioner had completed a term of incarceration and, upon release, had successfully completed a period of parole.

crime was no longer constitutionally permissible (*Ramirez,* 9 Cal.3d at pp. 202 and 211). In doing so, it engaged in a comprehensive review of the elaborate statutory scheme that had developed to minimize the potential for election fraud or tampering with the elective process, combined with a variety of penal sanctions to effectively deal with such mischief. The enforcement of such modern statutes regulating the election process and penalizing its abuse, it observed, was the least burdensome method in deterring election fraud rather than outright disfranchisement, which was not "necessary" in order to achieve such legitimate objective (*Ramirez,* 9 Cal.3d at pp. 212-216). In concluding that the provisions of article II and article XX, section 11 (and implementing statutes) violated Fourteenth Amendment guarantees by denying the right of suffrage to *all ex-felons whose terms of incarceration and parole had expired,* the court expressly withheld any expression of opinion as to whether disfranchisement of persons currently incarcerated or on parole was constitutionally permissible. (*Ramirez,* 9 Cal.3d at p. 217, fn. 18.)

The following month the Legislature adopted a proposal (Assem. Const. Amend. No. 38) to amend article II, section 3, and article XX, section 11, for consideration at the November 1974 general election;[10] and it simultaneously enacted implementing legislation (Assem. Bill No. 1128)[11] to become effective upon passage of the constitutional measure.

---

[10] Proposition 10, adopted by the electorate at the 1974 election, read as follows:

"First—That Section 3 of Article II be amended to read:

"SEC. 3. The Legislature shall prohibit improper practices that affect elections and shall provide for the disqualification of electors while mentally incompetent or imprisoned or on parole for the conviction of a felony.

"Second—That Section 11 of Article XX is amended to read:

"SEC. 11. Laws shall be made to exclude persons convicted of bribery, perjury, forgery, malfeasance in office, or other high crimes from office or serving on juries. The privilege of free suffrage shall be supported by laws regulating elections and prohibiting, under adequate penalties, all undue influence thereon from power, bribery, tumult, or other improper practice." (Stats. 1974, res. ch. 89, p. 3736.)

[11] Assembly Bill No. 1128, as adopted by the Legislature, amended the relevant sections of the Elections Code by substituting language corresponding to the proposed constitutional provision for disqualification of electors while imprisoned or on parole for a felony conviction: Section 310 (registration affidavit to show whether affiant convicted of a felony "for which any terms of imprisonment and parole have not expired"); section 321 (form of registration affidavit to include affiant's statement that he has not been convicted of a felony "for which any terms of imprisonment and parole have not expired"). Similar qualifying language was substituted in section 321.5 (county clerk's determination of eligibility of one convicted of a felony); section 321.7 (duty of registrar to provide a printed statement that only such felony convictions are disqualifying and of the right to seek judicial review of the clerk's determination of ineligibility); section 383 (grounds for cancellation of registration by county clerk); sections 389 and 390

The announced legislative purpose of those proposals was to bring state law into compliance with the *Ramirez* decision governing the voting right of ex-felons without disturbing existing law dealing with the franchise of convicted felons whose term of imprisonment and parole had *not* expired.[12] However, a sequence of events combined to frustrate a part of that overall intent and create further confusion between the subsequently amended constitutional provisions and existing regulatory legislation.[13]

In June 1974, the United States Supreme Court in *Richardson v. Ramirez, supra,* 418 U.S. 24, determined that in view of the exemption expressed in section 2 of the Fourteenth Amendment, section 1 of that amendment presented no constitutional barrier to state action in disfranchising those convicted of crime who had completed their sentences and paroles; accordingly, it reversed and remanded the cause for consideration of the alternative question whether existing practices of county election officials manifested a lack of uniformity in enforcing the challenged state law so as to work a denial of equal protection. (*Richardson, supra,* at p. 56 [41 L.Ed.2d at p. 572].) In July 1974, Assembly Bill No. 1128 was vetoed by the Governor, partly as a result of the reversal of the *Ramirez* decision. (9 Assem.J. (1973-1974) pp. 15912-15913.) Upon remand, the California Supreme Court concluded that the issue raised by the federal mandate was rendered moot by reason of the intervening adoption of article II, section 3, and "[that] there will no longer be any possibility of unconstitutional discrimination in local enforcement of laws disfranchising for conviction of crime." (*Ramirez v.*

---

(cancellation of registration affidavit by registrar); section 14240 (grounds for oral challenge); and section 14246 (proof of felony conviction).

[12]Assembly Bill No. 1128 expressed that legislative intent in the following language:

"SEC. 15. *It is the intent of the Legislature in enacting this act and proposing Assembly Constitutional Amendment No. 38 of the 1973-74 Regular Session of the Legislature for adoption by the people to conform the laws of this state to the decision of the Supreme Court of California in* Ramirez v. Brown *(1973) 9 Cal.3d 199 which governs the right of suffrage of persons whose terms of imprisonment and parole for the conviction of a felony have expired. It is also the intent of the Legislature that this act and Assembly Constitutional Amendment No. 38 shall not be construed to affect in any manner the existing constitutional, statutory, and decisional law of this state governing the right of suffrage of persons whose terms of imprisonment and parole for the conviction of a felony have not expired.*

"SEC. 16. This act shall become operative only if Assembly Constitutional Amendment No. 38 of the 1973-74 Regular Session of the Legislature is adopted by the people."

[13]In a followup survey conducted after the decision announced in *Ramirez v. Brown, supra,* 9 Cal.3d 199, the study previously mentioned (fn. 7, *ante*) disclosed that 75 percent of the responding counties would register all ex-felons, i.e., those who had completed their sentences by discharge or had completed their paroles; 6 of 34 responding counties would register parolees, while 22 excluded parolees; 6 counties continued to apply an "infamous crime" standard in determining a parolee's eligibility.

*Brown* (decided Nov. 29, 1974) 12 Cal.3d 912, 914 [117 Cal.Rptr. 562, 528 P.2d 378] (*Ramirez II*).) Thus, at that stage an anomaly existed in the law: constitutional disfranchisement was restricted to those "imprisoned or on parole for the conviction of a felony"; meanwhile, the relevant provisions of the Elections Code remained unchanged, retaining earlier language concerning potential disfranchisement of those convicted of "an infamous crime" or "embezzlement or misappropriation of public money" (§§ 383, 389, 390), and requiring a declaration by the elector whether he had been "convicted of a felony which disqualifies [him or me] from voting." (§§ 310, 321.) This perplexing circumstance was further compounded by legislative enactments during the next two years.

In 1975 several notable amendments to the Elections Code were made: Section 310 (subd. (j)), was amended to require that the registration affidavit show whether the affiant is currently "imprisoned or on parole for the conviction of a felony which disqualifies him . . . ." (Stats. 1975, ch. 1211, § 3, pp. 3054-3055.)

Section 321.5 was also amended to provide that the county clerk "shall determine whether a person who has been convicted of a felony is qualified to vote" (and notify him of his corresponding right to seek judicial review of a negative determination). (Stats. 1975, ch. 1211, § 4, p. 3055.) Former section 321.7 was repealed and a new section 321.7 added to provide that the voter registration card shall inform such affiant that his "registration will be reviewed by the county clerk who will inform him of its acceptance or rejection." (Stats. 1975, ch. 704, §§ 48-49, p. 1680.) Section 383, subdivision (c), was initially amended to require cancellation of registration upon proof that the elector was "imprisoned or on parole" for a felony conviction which disqualified him "pursuant to section 321.5, . . ." (Stats. 1975, ch. 704, § 54, p. 1682.) Later, that same section was again amended to require cancellation of registration upon a showing of conviction of "any infamous crime or . . . embezzlement or misappropriation of any public money."[14] (Stats. 1975, ch. 1197, § 1, p. 2962.) Additionally, section 14240, as amended, authorized an oral challenge at the polls on the ground of being "presently on parole" for a felony conviction found disqualifying under section 321.5. (Stats. 1975, ch. 704, § 72, pp. 1684-1685.) Finally, section 2600 of the

---

[14]Sections 389 and 390 (requiring purging of registration rolls by the county clerk and county election officials), retained similar language of disqualification.

Penal Code was repealed and new sections 2600 and 2601 were added,[15] both of which omitted any reference to a prisoner's right to vote.

The following year the Legislature substantially revised the Elections Code, renumbering the relevant sections[16] but retaining their substantive language. (Stats. 1976, ch. 1275 §§ 11-12, Stats. 1976, ch. 220, §§ 5-6.) The legislative scenario was completed by the repeal of Penal Code section 3054 (as a part of the Uniform Determinate Sentencing Act) while this appeal was pending.[17]

### Construction of Article II, Section 4

Appellant, asserting that the constitutional provision is unclear, advances a series of arguments based upon general principles of constitutional and statutory construction, to support his basic contention that article II, section 4, cannot be reasonably interpreted to exclude all paroled felons from the franchise. Briefly, his arguments may be summarized as follows: (1) the language that the Legislature "shall provide" indicates a clear mandate that the Legislature is exclusively authorized and empowered to establish the qualifications for voter eligibility and disfranchisement; (2) that in enacting the several amendments to the Elections Code, the Legislature has expressed an interpretation of the constitutional provision which would deny the franchise only to those convicted under California law of an *Otsuka*-type felony; (3) that a construction resulting in disfranchisement of all paroled felons is prohibited by the Fourteenth Amendment; (4) lastly, that since the Legislature has failed to expressly provide for disfranchisement of all paroled felons, the absolute disqualification imposed under respondents' policy is unlawful.

[15]Section 2600 sanctions denial of only such (prisoner's) rights as is necessary to provide institutional security and protection for the public. Section 2601 lists a number of "civil rights" which may not be denied while imprisoned. (Stats. 1975, ch. 1175, § 3, pp. 2897-2898.)

[16]The substance of former section 310 is now found in section 500; sections 321.5 and 321.7 are now contained in sections 101 and 102, respectively; sections 389 and 390 were renumbered as sections 707 and 708; and section 14240 was renumbered section 14216.

[17]The confusion resulting from the numerous attempts to adjust the statutory scheme is perhaps typified in the repeal of former section 100 (enacted in 1961) and reenactment of *identical* language in new section 100 as part of the 1976 legislation. Unfortunately, the tracking of the same statutory language (which referred to an earlier version of art. II, § 1, of the Constitution) results in a meaningless reference to a constitutional provision unrelated to the voter qualification process. (See present art. II, § 1 (former § 26), pertaining to nature of government.)

Respondents contend that the language in question, when viewed in the light of the legislative history, manifests a clear and unmistakable intention on the part of its framers (the 1973-1974 Legislature) to enfranchise true or fully discharged ex-felons without, however, changing then existing statutory and decisional law which continued to disfranchise imprisoned and paroled felons; that in enacting the legislation implementing the proposed amendment shortly after the decision in *Richardson,* which recognized the state's power to permanently deny the franchise to *all* convicted felons, the Legislature nevertheless chose to limit the prohibition only to felons whose terms of imprisonment and parole had yet to expire, thus removing the burden of disqualification from ex-felons as determined in the original *Ramirez* decision. We find this contention persuasive.

In construing the meaning and intent of the constitutional language, we are guided by established principles of construction and other extrinsic aids to constitutional interpretation. (*Methodist Hosp. of Sacramento* v. *Saylor* (1971) 5 Cal.3d 685, 691 [97 Cal.Rptr. 1, 488 P.2d 161]; 5 Witkin, Summary of Cal. Law (8th ed. 1974) § 70, pp. 3308-3310; see generally 13 Cal.Jur.3d, Constitutional Law, §§ 47-52, pp. 94-102; see also 16 Am.Jur.2d, Constitutional Law, §§ 80-86, pp. 261-270 *passim.*) In undertaking that construction, we are mindful that the words used should be accorded the ordinary and usual meaning given them among people by whose vote they were adopted (*In re Quinn* (1973) 35 Cal.App.3d 473 [110 Cal.Rptr. 881]), resorting to extrinsic aids only where doubt or ambiguity is manifested (*State Board of Education* v. *Levit* (1959) 52 Cal.2d 441, 462 [343 P.2d 8]). It is likewise recognized that if such meaning is doubtful or capable of more than one reasonable interpretation, the construction placed thereon by the Legislature is " 'of very persuasive significance.' " (*Methodist Hosp. of Sacramento* v. *Saylor, supra,* 5 Cal.3d at p. 693; see *Jolicoeur* v. *Mihaly* (1971) 5 Cal.3d 565, 572 [96 Cal.Rptr. 697, 488 P.2d 1]; see also *Lundberg* v. *County of Alameda* (1956) 46 Cal.2d 644, 652 [298 P.2d 1], and cases there cited.)

Assuming, arguendo, that the subject language is susceptible of varying interpretations requiring that we employ recognized aids to constitutional construction, we nevertheless reach the same conclusion. In responding to the first *Ramirez* decision resolving the issue of the ex-felon's right to vote, the Legislature formulated the proposed amendment consistent with the announced change in the law, together with

legislation clarifying the regulatory election process. Against such background, the proposal was submitted to and adopted by the people.[18] Although the interpretive legislation (Assem. Bill No. 1128, fn. 11, *ante*) was subsequently vetoed by the Governor, it nevertheless provides some "impression" of the Legislature's intended meaning. (*People* v. *Puritan Ice Co.* (1944) 24 Cal.2d 645, 653 [151 P.2d 1].) ■ ■ Notwithstanding the clear purpose of the amendment, much of the subsequent legislation[19] tended to obfuscate rather than clarify that purpose by both retaining and reviving discarded standards of "infamous crimes" and conviction of a "felony which disqualifies" as determined by local election officials. Regrettably, such ameliorative efforts as were undertaken to conform the relevant code sections met without success[20] thus perpetuating the very evils identified in the course of judicial review. (See *Ramirez* v. *Brown, supra,* 12 Cal.3d 912, 914; *Richardson* v. *Ramirez, supra,* 418 U.S. 24, 33-34, fn. 12, and 56 [41 L.Ed.2d 551, 559, and 572]; see fns. 7 and 13, *ante.*) However, the will of the electorate cannot be so carelessly thwarted.

---

[18]The ballot arguments submitted to the voters concerning proposition 10 (which is some evidence of the intent of the electorate in adopting the measure (*State of California* v. *Superior Court* (1962) 208 . Cal.App.2d 659, 664 [25 Cal.Rptr. 363])) reveal the following illuminating language. Supporting arguments urging that California join the majority of states restoring the right of "ex-felons" to vote, noted that the need to exclude "ex-felons" no longer existed; that an "ex-felon returned to society and released from parole" had fully repaid his debt to society and that the continued restriction on the right to vote impeded reintegration of "ex-felons" into society. The counter arguments stated the critical inquiry as whether one convicted of serious crime should be allowed to vote "once that person has served time and has completed parole." (Secretary of State, Cal. Ballot Pamp. Gen. Elec. (Nov. 5, 1974), pp. 38-39.)

[19]We agree with respondents' contention that the repeal of former Penal Code sections 2600 and 3054 in no way affected the disqualification of imprisoned or paroled felons. New sections 2600 and 2601 (fn. 15, *ante*), in restoring certain civil rights, expressly omitted to include the long-suspended right of suffrage attached to imprisonment. While the legislative history involving the repeal of section 3054 is silent, a reading of the various provisions relating to parole (Pen. Code, §§ 3000-3064), enacted under the Uniform Determinate Sentencing Law, as amended, discloses no attempt to enfranchise parolees as suggested by appellant; nor in our view would such an attempt be constitutionally permissible. The new parole provisions, now limiting the term of parole to one year in most cases and setting a maximum period of three years generally (Pen. Code, § 3000), reflect no contrary purpose concerning temporary disfranchisement during parole. Indeed, the existing provisions relating to restoration of all civil rights of successfully rehabilitated parolees following a minimum period of three years' rehabilitation (Pen. Code, §§ 4852.01-4852.03), expressly denotes the right to vote as one of them. (Pen. Code, §§ 4852.17, 4853.)

[20]For example, see Senate Bill No. 177, defeated June 27, 1975 (Senate J. (1975-1976 Reg. Sess.) p. 5582), and Assembly Bill No. 1167, defeated January 31, 1976 (Assem. Final History (1975-1976 Reg. Sess.) p. 708) which in substance would have accomplished the same purposes as Assembly Bill No. 1128.

■ It is an equally well accepted principle that in interpreting modern constitutions, their provisions will be presumed to be self-executing and to be given effect without legislation, unless a contrary intention is clearly expressed. (*Taylor* v. *Madigan* (1975) 53 Cal.App.3d 943 [126 Cal.Rptr. 376]; 5 Witkin, Summary of Cal. Law (8th ed. 1974) Constitutional Law, § 38, pp. 3277-3278; 16 Am.Jur.2d, Constitutional Law, §§ 93, 94, p. 280; 13 Cal.Jur.3d, Constitutional Law, §§ 31-33, pp. 71-75.) ■ And it has been judicially determined that "... 'A constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right given may be enjoyed and protected, or the duty imposed may be enforced. . . .' [Citation.] [¶] Although a constitutional provision may be self-executing the Legislature may enact legislation to facilitate the exercise of the powers directly granted by the Constitution. (*Chesney* v. *Byram* (1940) 15 Cal.2d 460, 463 [101 P.2d 1106].) 'It is not and will not be questioned but that if the constitution has vested such power, it is not within the legislative power, either by its silence or by direct enactment, to modify, curtail, or abridge this constitutional grant.' (*Western Assn. etc. R.R.* v. *Railroad Com.* (1916) 173 Cal. 802, 804 [162 P. 391, 1 A.L.R. 1455].)" (*People* v. *Western Air Lines, Inc.* (1954) 42 Cal.2d 621, 637 [268 P.2d 723]; *Rose* v. *State of California* (1942) 19 Cal.2d 713, 720-721 [123 P.2d 505]; accord: *Taylor* v. *Madigan, supra,* 53 Cal.App.3d 943, 950-951; *Winchester* v. *Howard* (1902) 136 Cal. 432, 440 [64 P. 692, 69 P. 77].) ■ Nor is there any legal significance in the failure of the Legislature to carry out the directive indicated by the constitutional provision. As aptly stated in the early case of *Scott* v. *Larson* (1927) 82 Cal.App. 46, at page 50 [255 P. 248]: "Were it otherwise, the plain intent of the beneficial provisions of the constitution might be thwarted and indefinitely delayed, either premeditatedly, through sheer procrastination or neglect on the part of the legislators, or from the inability of the members in either house of the legislature to agree, either among themselves or with the coordinate branch of the lawmaking body, upon the practice or the form of procedure or whatever regulatory measure which might be suggested or seem desirable. . . . The fiat of the people having gone forth, it should be obeyed."

■ Likewise, the mandate here involved states in unambiguous language of certain meaning that legislative provision shall be made for disqualification of electors "while . . . imprisoned or on parole for the conviction of a felony." And, as we have shown, that directive must be interpreted to mean simply that the Legislature's authority to implement is well recognized (*Ramirez* v. *Brown, supra,* 9 Cal.3d 199, 204-205);

conversely, and of paramount importance, it in no wise sanctions establishment of standards or procedures, through legislative action or inaction, not in harmony with and tending to frustrate the clear constitutional design. Nor is a contrary conclusion compelled simply because another part of the constitutional provision may depend upon legislative action in order to effectuate its purpose;[21] such limited circumstance can in no manner qualify the part under review readily capable of self-execution and whose language adequately sets forth the rule through which the duty imposed may be enforced. (*People* v. *Board of Ed. of Oakland* (1880) 55 Cal. 331, 336; *Chesney* v. *Byram* (1940) 15 Cal.2d 460, 462 [101 P.2d 1106].)

We hold, therefore, that the provisions of article II, section 4, of the California Constitution for the disqualification of electors while imprisoned or on parole for the conviction of a felony are self-executing; that pursuant to such self-executing provisions, an elector convicted of *any* felony is temporarily disfranchised while serving a sentence of imprisonment or while undergoing an unexpired term of parole. We realize that our conclusion will inevitably result in denial of the precious right of suffrage, albeit temporarily, to a significant number of persons[22] who, like appellant, have successfully reentered society as law-abiding citizens leading useful and productive lives. Whatever may be the more enlightened view concerning restoration of the right of franchise to paroled felons during their period of rehabilitation, it is in nature a policy question to be decided by the people and not for the courts "to choose one set of values over [an] other." (*Richardson* v. *Ramirez, supra,* 418 U.S. 24, 55 [41 L.Ed.2d 551, 571].)

Nor do we conceive in what manner such construction is said to clash with the equal protection clause of the Fourteenth Amendment. Without benefit of supporting authority, appellant argues that the express exemption provided by section 2 of the amendment (*Richardson* v. *Ramirez, supra,* 418 U.S. 24, 42-56 [41 L.Ed.2d 551, 564-572]) must be

---

[21]Appellant attempts to buttress his argument for exclusive legislative determination of voter ineligibility by focusing on the language providing for disqualification of those "mentally incompetent." Whatever its merits may be as pertain to that specific class of voters, it is not germane to our discussion and need not be addressed. Suffice to say, it too appears to present a question the Legislature has as yet been unable to resolve. (See Bolinger, Cal. Election Laws During the Sixties and Seventies: Liberalization and Centralization, 28C West's Ann. Elec. Code (1977 ed.) pp. 55, 97.)

[22]Appellant in his brief cites statistics compiled by state and federal agencies in 1975 and 1976, placing the total number of felons then on parole in California in the range of 14,000 persons.

limited to disfranchisement in *national* elections alone. While the merits of his argument are not entirely clear, the gist of this novel theory is that the decision in *Richardson* was restricted to special considerations warranting an "affirmative sanction" relating to federal elections for which no similar "interest [was] at stake" (nor similar exemption provided) in local elections. His argument is unsound.

First, it is readily apparent that under the holding in *Richardson* recognizing the state's power to broadly disfranchise fully discharged ex-felons (subject to Fourteenth Amendment review for discriminatory enforcement), the present constitutional provision uniformly applicable to a narrower, included class of imprisoned and paroled felons, does not violate the equal protection clause. Secondly, section 2 of the Fourteenth Amendment expressly embraces *state* elections as well within the meaning of the exemption. Moreover, appellant was seeking to register for the June 1976 *consolidated primary election* involving state and federal offices, both of which are explicitly enumerated in section 2 as subject to the exemption.

Nor do we find appellant's alternative equal protection argument relating to federal and foreign parolees persuasive. As previously indicated, no substantive distinction was observed between California convictions and foreign convictions under an earlier constitutional standard of disfranchisement. (See *Otsuka* v. *Hite, supra,* 64 Cal.2d 596, 611-612, fn. 14.) We see no basis for making such a distinction here. ■ Accordingly, we determine that the constitutional language of temporary disfranchisement applies uniformly to all paroled felons in California whether convicted under the laws of California, any sister state or federal jurisdiction.

■ Finally, the state respondents argue that the several statutes facially inconsistent with the constitutional mandate may nevertheless be reconciled in harmony with that expressed, self-executing mandate. We do not share such an optimistic view.

■ We fully recognize that wherever possible courts should presume that the Legislature intended to enact a valid statute and to interpret its provisions so as to preserve their constitutional validity. (See generally 5 Witkin, Summary of Cal. Law (8th ed. 1974) Constitutional Law, §§ 43, 69, pp. 3281-3282 and 3308, and authorities cited.) But such a construction is only permitted "[i]f the terms of [the statute] are by fair and reasonable interpretation capable of a meaning consistent with the

... Constitution." *(County of Los Angeles* v. *Legg* (1936) 5 Cal.2d 349, 353 [55 P.2d 206].)

 In urging that the language "convicted of a felony which disqualifies" as it relates to determination of eligibility (§§ 101-102), registration (§§ 500 and 506), and challenge (§ 14216), is merely descriptive and limited to other nondisqualifying fact situations, respondents totally ignore the plain language of the statutes as well as the lessons of history. Similarly, their attempt to salvage the obsolete "infamous crimes" language (former §§ 383, 389 and 390, reenacted as §§ 701, 707 and 708) by a post-*Otsuka* interpretation intended to apply only to felonies infamous *by virtue of the punishment imposed,* overburdens both reason and fundamental principles of construction alike. We cannot indulge in such sheer conjecture as suggested by respondents in an otherwise unconvincing effort to reconcile the language contained in the several statutes which is clearly repugnant to the constitutional provision.

We thus conclude that the several sections of the Elections Code inconsistent with the explicit language of article II, section 4, are constitutionally invalid and ineffectual.

The judgment is affirmed.

Elkington, J., and Sims, J.,* concurred.

A petition for a rehearing was denied May 16, 1978, and appellant's petition for a hearing by the Supreme Court was denied June 15, 1978.

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.