TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 95-513 |
| of | : | |
| | : | August 23, 1995 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| CLAYTON P. ROCHE | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE SAL CANELLA, MEMBER OF THE CALIFORNIA ASSEMBLY, has requested an opinion on the following question:

May a city or county impose a fee upon a tax exempt nonprofit organization measured as a percentage of the gross receipts derived from the operation of bingo games?

CONCLUSION

A city or county may not impose a fee upon a tax exempt nonprofit organization measured as a percentage of the gross receipts derived from the operation of bingo games.

ANALYSIS

Article IV, section 19 of the Constitution states that "the Legislature by statute may authorize cities and counties to provide for bingo games, but only for charitable purposes." The Legislature has implemented this constitutional provision by enacting a comprehensive statutory scheme authorizing cities and counties to allow specified nonprofit organizations, mobilehome park associations, and senior citizens organizations to conduct bingo games for charitable purposes. Penal Code section 326.5[1] provides:

_____

[1]All references hereafter to the Penal Code are by section number only.

1. 95-513

"(a) Neither this chapter [prohibiting lotteries] nor Chapter 10 [prohibiting gaming] . . . applies to any bingo game which is conducted in a city, county, or city and county pursuant to an ordinance enacted under Section 19 of Article IV of the State Constitution, provided that the ordinance allows games to be conducted only by organizations exempted from the payment of the bank and corporation tax by Sections 23701a, 23701b, 23701d, 23701e, 23701f, 23701g, and 23701*l* of the Revenue and Taxation Code and by mobilehome park associations and senior citizens organizations; and provided that the receipts of those games are used only for charitable purposes.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(f) An organization authorized to conduct bingo games pursuant to subdivision (a) shall conduct a bingo game only on property owned or leased by it, or property whose use is donated to the organization, and which property is used by that organization for an office or for performance of the purposes for which the organization is organized. Nothing in this subdivision shall be construed to require that the property owned or leased by, or whose use is donated to, the organization be used or leased exclusively by, or donated exclusively to, that organization.

"(g) All bingo games shall be open to the public, not just to the members of the authorized organization.

"(h) A bingo game shall be operated and staffed only by members of the authorized organization which organized it. Those members shall not receive a profit, wage, or salary from any bingo game. Only the organization authorized to conduct a bingo game shall operate such a game, or participate in the promotion, supervision, or any other phase of such a game. This subdivision does not preclude the employment of security personnel who are not members of the authorized organization at such a bingo game by the organization conducting the game.

"(i) No individual, corporation, partnership, or other legal entity, except the organization authorized to conduct a bingo game, shall hold a financial interest in the conduct of such a bingo game.

"(j) With respect to organizations exempt from payment of the bank and corporation tax by Section 23701d of the Revenue and Taxation Code, all profits derived from a bingo game shall be kept in a special fund or account and shall not be commingled with any other fund or account. Those profits shall be used only for charitable purposes.

"(k) With respect to other organizations authorized to conduct bingo games pursuant to this section, all proceeds derived from a bingo game shall be kept in a special fund or account and shall not be commingled with any other fund or account. Proceeds are the receipts of bingo games conducted by organizations not within subdivision (j). . . .

95-513

"(*l*) (1)  A city, county, or city and county may impose a license fee on each organization which it authorizes to conduct bingo games.  The fee, whether for the initial license or renewal, shall not exceed fifty dollars ($50) annually, except as provided in paragraph (2).  If an application for a license is denied, one-half of any license fee paid shall be refunded to the organization.

"(2)  In lieu of the license fee permitted under paragraph (1), a city, county, or city and county may impose a license fee of fifty dollars ($50) paid upon application.  If an application for a license is denied, one-half of the application fee shall be refunded to the organization.  *An additional fee of one percent of the monthly gross receipts over five thousand dollars ($5,000) derived from bingo games shall be collected monthly by the city, county, or city and county issuing the license.*"

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."

(Italics added.)

We are asked to determine whether the component of the alternative fee of section 326.5, subdivision (*l*)(2), of "one percent of the monthly gross receipts over five thousand dollars ($5,000) derived from bingo games" may continue to be collected from certain nonprofit organizations in light of a recent amendment to the Constitution.  In 1994 the electorate adopted Proposition 176, adding subdivision (d) to section 26 of article XIII of the Constitution as follows:

"A nonprofit organization that is exempted from taxation by Chapter 4 (commencing with Section 23701) of Part II of Division 2 of the Revenue and Taxation Code or Subchapter F (Commencing with Section 501) of Chapter 1 of Subtitle A of the Internal Revenue Code of 1986, or the successor of either, is exempt from any business license tax or fee measured by income or gross receipts that is levied by a county or city, whether charter or general law, a city and county, a school district, a special district, or any other local agency."

We conclude that nonprofit organizations specified in the new constitutional amendment may not be charged the alternative fee of section 326.5, subdivision (*l*)(2).

In 78 Ops.Cal.Atty.Gen. ___ (1995), we recently examined in detail the language of the 1994 constitutional amendment.  We found the language "clear and unambiguous" (*id*., at p. __), quoting from *Delaney* v. *Superior Court* (1990) 50 Cal.3d 785, 798, as follows:

"`We begin with the fundamental rule that our primary task is to determine the lawmakers' intent.  (*Brown* v. *Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 724.)  In the case of constitutional provisions adopted by the voters, their intent governs.  (*Kaiser* v. *Hopkins* (1936) 6 Cal.2d 537, 538; *Armstrong* v. *County of San Mateo* (1983) 146 Cal.App.3d 597, 618.)  To determine intent, "`The court turns first to the works themselves for the answer.'"  (*Brown* v. *Kelly Broadcasting Co., supra,* 48

Cal.3d 711, 724, quoting *Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230.) "If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature (in the case of a statute) or of the voters (in the case of a provision adopted by the voters)." (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735.)'" (*Id.*, at p. __.)

We concluded:

". . . The apparent intent of the voters in adopting Proposition 176 was thus to prohibit the imposition of a business license tax upon nonprofit organizations when it is measured by income or gross receipts. The voters in no way purported to affect the ability of local agencies under proper constitutional or statutory authority to levy such taxes, in the words of the Legislative Analyst, `based on other methods.' In fact the Legislative Analyst even pointed out some other methods, such as `a percentage of payroll . . . number of employees or business square footage.'" (*Id.*, at p. ___.)

Here the Legislature has provided cities and counties statutory authority to levy fees upon nonprofit organizations without violating the new constitutional exemption. Such authority is found in section 326.5, subdivision (*l*)(1), the alternative license fee of "fifty dollars ($50) annually."

Of course, a city or county may continue to impose the alternative fee of section 326.5, subdivision (*l*)(2), upon organizations that are not specified in the constitutional exemption. As previously quoted, subdivision (a) of 326.5 allows bingo games to be conducted "by organizations exempted from the payment of the bank and corporation tax by Section 23701a, 23701b, 23701d, 23701e, 23701f, 23701g, and 23701*l* of the Revenue and Taxation Code and by mobilehome park associations and senior citizens organizations." The constitutional exemption, on the other hand, is for nonprofit organizations "exempted from taxation by [sections 237701-23710] . . . of the Revenue and Taxation Code or [sections 501-528] . . . of the Internal Revenue Code . . . ." While an overlap is clearly present, the two provisions are not identical in scope.

Hence, there is no need for the Legislature to repeal subdivision (*l*)(2) of section 326.5 in light of the new constitutional exemption. The alternative license fee may still be charged those entities not covered by the constitutional provision. In this manner both provisions may be harmonized and given effect. (Cf. *Long Beach Police Officers Assn.* v. *City of Long Beach* (1988) 46 Cal.3d 736, 744; *Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735.)

A "business license tax" is typically defined as a "levy upon the privilege of doing business within the taxing jurisdiction." (*Weekes* v. *City of Oakland* (1978) 21 Cal.3d 386, 394; 78 Ops.Cal.Atty.Gen., *supra*, ___.) The operation of bingo games under the terms of section 326.5 is obviously a "business" as that term is normally defined. (See Webster's Third New Internat. Dict. (1971) p. 302 ["commercial or mercantile activity customarily engaged in as a means of livelihood and typically involving some independence of judgment and power of decision"]; Evid. Code, § 1270 ["every kind of business, governmental activity, profession, occupation, calling, or operation of institutions, whether carried on for profit or not"]; Lab. Code, § 350, subd. (f) ["any business establishment, or enterprise, regardless of where conducted"]; Rev. & Tax. Code, § 6013 ["any activity

engaged in by any person or caused to be engaged in by him with the object of gain, benefit, or advantage, either direct or indirect"].)

Significantly the "business" of operating bingo games in California must have as its purpose the raising of revenues "only for charitable purposes." (Cal. Const., art. IV, § 19; § 326.5, subd. (a).) It is apparent that the framers of Proposition 176, as well as the electorate, were primarily concerned with preventing the reduction of funds available for the charitable purposes of nonprofit organizations caused by the imposition of local taxes. (Ballot Pamp., Prim. Elec. (June 7, 1994) pp. 10-13.)

As we indicated in our recent opinion, business license taxes may have both regulatory and revenue raising purposes. (78 Ops.Cal.Atty.Gen., *supra*, ___; see Bus. & Prof. Code, §§ 16000-16100; Gov. Code, §§ 37100.5, 37101; Rev. & Tax. Code, §§ 7284, 7284.1.) If a city or county is dissatisfied with the fees generated from nonprofit organizations under the terms of section 326.5, subdivision (*l*)(1), it may seek a statutory increase from the Legislature. (See Cal. Const., art. IV, § 19; *City and County of San Francisco* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 103, 113; *County of Los Angeles* v. *Sasaki* (1994) 23 Cal.App.4th 1442, 1453-1454.) Of course, its final recourse would be to prevent bingo games from being conducted within its jurisdiction. If it determined, for example, that the fees collected did not cover the regulatory expenses involved, the city or county need only repeal its ordinance allowing the operation of bingo games.

We recognize that "[c]onstitutional provisions and statutes granting exemption from taxation are strictly construed to the end that such concession will be neither enlarged not extended beyond the plain meaning of the language employed." (*Cedars of Lebanon Hosp.* v. *County of L.A.* (1950) 35 Cal.2d 729, 734.) Moreover, the framers of Proposition 176 and the electorate were most likely unaware of the alternative license fee of section 326.5, subdivision (*l*)(2), when the constitutional amendment was approved last year. (Ballot Pamp., Prim. Elec. (June 7, 1994) pp. 10-13; see *Legislature* v. *Eu* (1991) 54 Cal.3d 492, 504-505; *Raven* v. *Deukmejian* (1990) 52 Cal.3d 336, 349; *In re Lance* (1985) 37 Cal.3d 873, 889; *Mosk* v. *Superior Court* (1979) 25 Cal.3d 474, 495; *Amador Valley Joint Union School District* v. *State Board of Equalization* (1978) 22 Cal.3d 208, 245-246.)

Nevertheless, we find the language of the Constitution to be clear and unambiguous with respect to the question presented. The 1994 constitutional amendment is self-executing (see *Flood* v. *Riggs* (1978) 80 Cal.App.3d 138, 154) and binds the Legislature (see *People* v. *Navarro* (1972) 7 Cal.3d 248, 260; *Pooled Money Investment Bd.* v. *Unruh* (1984) 153 Cal.App.3d 155, 160; *Molar* v. *Gates* (1979) 98 Cal.App.3d 1, 24). The alternative license fee of section 326.5, subdivision (*l*)(2), may still be imposed with respect to those entities not specified in the constitutional provision. Moreover, cities and counties may continue to levy business license fees against nonprofit organizations under the express terms of section 326.5, subdivision (*l*)(1).

We conclude that a city or county may not impose a fee upon a tax exempt non-profit organization as a percentage of the gross receipts derived from the operation of bingo games.

* * * * *