THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* GEORGE FABIAN, Appellant.

ELECTION LAW — PERSONS EXCLUDED FROM RIGHT OF SUFFRAGE — MEANING OF WORD "CONVICTED" IN PROVISIONS OF CONSTITUTION AND STATUTES DISFRANCHISING PERSONS CONVICTED OF INFAMOUS CRIMES. The word "convicted," used in section 2 of article 2 of the Constitution of the state of New York, which provides that, "The Legislature shall enact laws excluding from the right of suffrage all persons convicted of bribery or of any infamous crime," and in the statute, enacted in compliance therewith, that "no person who has been convicted of a felony shall have the right to register for or vote at any election, unless he shall have been pardoned and restored to the rights of citizenship" (Election Law, § 34, as amd. by L. 1901, ch. 654, § 2), must be construed to imply a judgment based on a verdict of guilty. Therefore, a person against whom sentence has been suspended after verdict has not

been convicted within the meaning of the Constitution or the statutes enacted in pursuance thereof, and is not liable to indictment for voting at an election, "not being qualified therefor," in violation of the provi· sions of the statute. (Penal Code, § 41-l, as amd. by L. 1901, ch. 371.)

*People* v. *Fabian,* 126 App. Div. 89, reversed.

(Submitted June 10, 1908; decided September 29, 1908.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered May 15, 1908, which reversed an order of the Court of General Sessions of the Peace in the county of New York sustaining a demurrer to an indictment and overruled such demurrer.

The facts, so far as material, are stated in the opinion.

*Louis A. Cuvillier, Daniel F. Cohalan, Robert L. Luce, William A. McQuade, John J. Freschi* and *Charles Goldzier* for appellant. The word "convicted" in article 2, section 2, of the Constitution means the judgment of the court; the sentence imposed by the court is the judgment; there having been no sentence here, there was no judgment; therefore, no conviction. (*People ex rel. Forsyth* v. *Court of Sessions,* 141 N. Y. 283; *People* v. *McGloin,* 91 N. Y. 241; *Blaufus* v. *People,* 69 N. Y. 107; *People* v. *Sullivan,* 34 App. Div. 548; *Sacia* v. *Decker,* 1 Civ. Pro. Rep. 47; *People ex rel. Siebert* v. *Police Commissioners,* 20 Hun, 337; *People* v. *Whipple,* 9 Cow. 707; *People* v. *Wilson,* 60 Fed. Rep. 890; *Gallagher* v. *State,* 10 Tex. App. 469; *Kingsbury* v. *State,* 37 Tex. Cr. 259, 265; *Faunce* v. *People,* 51 Ill. 311.) The provisions of the Code of Criminal Procedure regarding the suspension of judgment after plea or verdict conclusively established by legislative act that a finding of guilt is not a conviction within the purview of the Election Law. (L. 1893, ch. 651; *Pratt Inst.* v. *City of New York,* 183 N. Y. 151.)

*William S. Jackson, Attorney-General (John Palmieri* of counsel), for respondent. The word "convicted" as used in article 2, section 2, of the Constitution, means one found guilty either by the jury's verdict or a plea of guilty, and the legis-

lature had, therefore, ample power to determine that a conviction without judgment would disqualify a person from voting, and did so determine by appropriate enactment (Election Law, § 34, subd. 10), and also provided a punishment for a violation thereof. (Penal Code, § 41-1; 4 Am. & Eng. Ency. of Law, 140; *Comm.* v. *Richards,* 17 Pick. 295; *Quintard* v. *Knoedler,* 53 Conn. 485; *U. S.* v. *Watkins,* 6 Fed. Rep. 152; *Shepherd* v. *People,* 25 N. Y. 406; *Comm.* v. *Lockwood,* 109 Mass. 323; *York Co.* v. *Dalhousen,* 45 Penn. St. 372; *Ex parte Brown,* 68 Cal. 176; *U. S.* v. *Gilbert,* 2 Sumn. 19; *Kane* v. *Haywood,* 66 N. C. 1; *People* v. *Goldstein,* 32 Cal. 432.)

WILLARD BARTLETT, J.  The indictment charged the defendant with the crime of knowingly voting at an election " not being qualified therefor." The alleged disqualification was based on the fact that the voter had previously been indicted for burglary in the first degree and upon his trial therefor a verdict of guilty had been rendered against him, although no judgment was ever entered upon the verdict, sentence having been suspended. The defendant demurred to the indictment upon the ground that the facts stated therein did not constitute a crime, the specific basis of his objection being that a voter has not been " convicted " within the meaning of the Constitution and the disqualifying statutes unless the verdict against him has been followed by a judgment. In other words, the contention in behalf of the defendant is that the conviction necessary to work a disqualification is not merely a *verdict of conviction,* but that it must be a *judgment of conviction.* The Court of General Sessions agreed with him in this respect and allowed the demurrer; but the learned Appellate Division held that a verdict of guilty, alone and of itself, is sufficient to disqualify, although no judgment is ever pronounced thereon, and (by a vote of three to two) it has reversed the order allowing the demurrer, and remitted the case to the trial court, there to be proceeded with as required by the law. The defendant now comes here.

Section 1 of article 2 of the present Constitution of this state, adopted in 1894, relates, as its sub-title indicates, to the qualification of voters; and section 2 of the same article relates to persons excluded from the right of suffrage. Two classes of persons are expressly prohibited from voting at elections by the very terms of the section itself: (1) Those who pay or receive or offer to pay or receive anything as a consideration for giving or withholding their votes; and (2) those who make or become interested in election bets or wagers. There is a third class who are to be disfranchised by means of legislative enactments, the mandate to that effect being contained in these words: " The Legislature shall enact laws excluding from the right of suffrage all persons convicted of bribery or of any infamous crime."

The Election Law accordingly provides that " No person who has been convicted of a felony shall have the right to register for or vote at any election unless he shall have been pardoned and restored to the rights of citizenship." (Laws of 1901, chap. 654, sec. 2, subd. 10.) This enactment follows the command imposed upon the legislature by the mandatory provision which I have quoted from section 2 of article 2 of the State Constitution. The statute under which the defendant was indicted is section 41-1 of the Penal Code (as amended by chapter 371 of the Laws of 1901). The only portion thereof necessary to be considered here reads as follows: " Any person who : 1. Knowingly votes or offers or attempts to vote at any election or town meeting, when not qualified  *  *  * is guilty of felony, punishable by imprisonment in a state prison not less than one nor more than five years." The indictment is clearly good if the defendant is to be deemed to have been *convicted* of the crime of burglary by reason of the rendition of a verdict of guilty against him, upon which verdict sentence was suspended and no judgment has ever been pronounced. It is clearly bad if he cannot be deemed *convicted* within the meaning of the Constitution, in the absence of a judgment upon that verdict. This brings us to the question upon which the determination of the appeal depends:

What is the signification of the word *convicted* in section 2 of article 2 of the Constitution of the state of New York which provides: " The Legislature shall enact laws excluding from the right of suffrage all persons *convicted* of bribery or of any infamous crime " ?

When the existing Constitution was adopted in 1894, a provision contemplating the disfranchisement of convicts was not new to the fundamental law.   There was such a provision in the Constitution of 1822 and also in the Constitution of 1846, only it was permissive in form instead of being mandatory upon the legislature.   The Constitution of 1822 (Art. 2, § 2) provided that "laws may be passed excluding from the right of suffrage, persons who have been, or may be, convicted of infamous crimes."   There was a slight change of phraseology in the Constitution of 1846 (Art. 2, § 2), where the provision read : " Laws may be passed, excluding from the right of suffrage all persons who have been or may be convicted of bribery, larceny, or of any infamous crime."   In one respect, however, all three Constitutions have been alike.   By every one the legislature has been authorized to disfranchise any person convicted of infamous crime.   The meaning of the word *convicted*, therefore, at the time when it was introduced into this provision of the organic law in 1822 ought to guide us to the true purport of the term as used to-day in the Constitution of 1894.

Bearing in mind the character of the legislation which the constitutional provision was designed to authorize, I think the prevailing rule of the common law as to what sort of a conviction served to disqualify a witness indicates what sort of a conviction the framers of the Constitution contemplated as such as should cause a citizen to be excluded from the right of suffrage.   They were dealing with the question of the disqualification of voters.   They proposed to let the legislature disqualify voters who had been or should be convicted of any infamous crime.   Under the common law, witnesses who had been convicted of infamous crimes were disqualified from testifying, but were not deemed to have been thus con-

victed unless the record established the rendition of a judg-
ment upon the verdict. (*People* v. *Herrick,* 13 Johns. 82;
*People* v. *Whipple,* 9 Cowen, 707.) It was the judgment,
and that only, which was received as the legal and conclusive
evidence of the party's guilt for the purpose of rendering him
incompetent to testify. (Greenleaf on Evidence, § 375.) This
disqualification of witnesses as a consequence of crime was
one with which the courts at that day, and consequently the
public, must have been most familiar, and it seems to me
quite natural that the members of the constitutional conven-
tion should have had it in mind, and that when they spoke of
" persons convicted " they meant persons against whom a
judgment of conviction had been rendered. It would hardly
be reasonable to authorize the disfranchisement of a voter
simply because a verdict had been found against him (upon
which judgment might have been or might yet be arrested)
and yet require proof that the verdict had been followed by a
judgment in order to effect the disqualification of a witness.

　Upon reason, apart from authority, it will hardly be con-
tended that a man should be deprived of the right of suffrage
by a less conclusive judicial pronouncement against him than
is required to disqualify him or affect his credibility as a wit-
ness. The disqualification of a witness on the ground that he
has been convicted of crime is clearly analogous to the dis-
franchisement of a voter on the same ground. In discussing
the rule which thus renders a witness incompetent in the case
of *Faunce* v. *People* (51 Ill. 311) the Supreme Court of
Illinois has said : " An examination of the adjudged cases in
the various States of the Union, where substantially the same
laws are in force, will show that it is not the commission of
the crime, nor the verdict of guilty, nor the punishment, nor
the infamous nature of the punishment, but the final judg-
ment of the court that renders the culprit incompetent. It
is true that writers and judges have loosely said that a party
is convicted on the finding of a verdict against him. It is
true in a sense that he has been convicted by the jury, but not
until the judgment is rendered is he convicted by the law;

and the statute only, like the common law, refers to the conviction imposed by the law."

It may readily be conceded that the words *convicted* and *conviction* are often employed with reference to the verdict in a criminal case as distinguished from the judgment, without affecting the validity of this argument as to the meaning of *convicted* in the constitutional provision under consideration and in the legislative enactments adoped in pursuance thereof. In *Schiffer* v. *Pruden* (64 N. Y. 47) FOLGER, J., after declaring that the word *conviction* ordinarily signifies the finding of the jury by a verdict that the accused is guilty, adds: " Yet the word sometimes denotes the final judgment of the court. * * * Thus the case of a witness rendered incompetent to testify by conviction for an infamous crime has an analogy. The language of the law is that he is rendered incompetent by his conviction of treason, felony or *crimen falsi;* but to shut him from the witness box his conviction must be shown by a judgment." Indeed, at the present day and in the general statute which regulates the administration of justice in the criminal courts of this state, we find the word *conviction* used in both senses. Instances in which it imports a judgment occur in the Code of Criminal Procedure, in sections 442, 449, 519, 527 and 528, in each of which will be found the phrase "judgment of conviction." This use of the term, with varying meanings, even in the same statute, and extending right down to the immediate present, certainly demonstrates that there is no fixed signification which the courts are bound to adopt, and leaves us the utmost freedom of inquiry as to what was intended when the legislature was empowered to disfranchise convicted citizens. Is a verdict of conviction enough, or must there be a judgment also — what the Code of Criminal Procedure denominates a judgment of conviction?

I think this question is correctly answered in the dissenting opinion of Mr. Justice JOHN PROCTOR CLARKE, in the Appellate Division, by his statement that " where disabilities, disqualifications and forfeitures are to follow upon a conviction,

29

in the eye of the law, it is that condition which is evidenced by sentence and judgment; and that where sentence is suspended, and so the direct consequences of fine and imprisonment are suspended or postponed temporarily or indefinitely, so, also, the indirect consequences are likewise postponed."

Authorities are not wanting in support of this view.

In *Commonwealth* v. *Lockwood* (109 Mass. 323) it was held that the constitutional power of the governor to pardon "before conviction" could be exercised after a verdict of guilty and before sentence. This was on the ground, as stated in the opinion of Mr. Justice GRAY, that "the ordinary legal meaning of 'conviction,' when used to designate a particular stage of a criminal prosecution triable by a jury, is the confession of the accused in open court, or the verdict returned against him by the jury, which ascertains and publishes the fact of his guilt; while 'judgment' or 'sentence' is the appropriate word to denote the action of the court before which the trial is had, declaring the consequences to the convict of the fact thus ascertained." But the same learned judge further on in his opinion calls attention to the broader meaning which attaches to the term when it is employed for disqualifying purposes, precisely as it seems to me the word "convicted" is employed in the constitutional provision and legislation before us in the present case. He says: "When indeed the word 'conviction' is used to describe the effect of the guilt of the accused as judicially proved in one case, when pleaded or given in evidence in another, it is sometimes used in a more comprehensive sense, including the judgment of the court upon the verdict or confession of guilt; as, for instance, in speaking of the plea of *autrefois convict,* or of the effect of guilt, as judicially ascertained, as a disqualification of the convict. And it might be held to have the same meaning in the somewhat analogous case in which the Constitution provides that 'no person shall ever be admitted to hold a seat in the legislature or any office of trust or importance under the government of this Commonwealth, who shall in due course of law have been convicted

of bribery or corruption in obtaining an election or appointment.' Const. of Mass. c. 6, art. 2. See *Case of Falmouth*, Mass. Election Cases (ed. 1853), 203."

Here we have a judicial intimation of much weight to the effect that a constitutional disqualification dependent upon an officer having been *convicted* of bribery or corruption in procuring his office contemplates " the judgment of the court upon the verdict or confession of guilt." There are other Massachusetts cases in which the term " conviction " as used in statutes has been held to imply a judgment and sentence following the verdict. In *Commonwealth* v. *Kiley* (150 Mass. 325) it is said to be very frequently used with this implication in the statutes of Massachusetts. There the act of the legislature under consideration provided that the conviction by a court of competent jurisdiction of a person licensed to sell intoxicating liquors should in itself make his license void. " We are of opinion," said Mr. Justice KNOWL-TON, " that nothing less than a final judgment, conclusively establishing guilt, will satisfy the meaning of the word ' conviction ' as here used. At any time before the final judgment of the court a motion in arrest of judgment may be made, or the verdict may be set aside upon a motion for a new trial, on the ground of newly discovered evidence, or for other good cause; and, upon further proceedings, it may turn out that the defendant is not guilty." Accordingly it was held that inasmuch as the verdict of the jury had not been followed by a judgment the defendant had not been convicted within the meaning of the statute, so as to invalidate his license. So it had previously been held in *Commonwealth* v. *Gorham* (99 Mass. 420) that a judgment was necessary to constitute a conviction sought to be proven to affect the credibility of a witness, under a statute providing that a conviction of crime might be shown for that purpose.

" All persons convicted of any felony " are prohibited from voting in Texas, both by statute and the Constitution of that state. The word " convicted " as thus used means "that a judgment of final condemnation has been pronounced against

the accused." (*Gallagher* v. *State*, 10 Texas Ct. of Appeals, 469.)

As to the numerous cases cited in the briefs of both parties· to the present appeal, in which the words "conviction" and "convicted" are differently defined, it may be said generally that where the context of the statute refers to the successive steps in a criminal case, or any particular stage of such a prosecution as distinguished from the others, these words apply simply and solely to the verdict of guilty; but where the reference is to the ascertainment of guilt in another proceeding in its bearing upon the status or rights of the individual in a subsequent case, then a broader meaning attaches to the expressions, and a "conviction" is not established or a person deemed to have been "convicted" unless it is shown that a judgment has been pronounced upon the verdict.

The case which goes farthest in support of the position of the respondents is *United States* v. *Watkinds* (6 Fed. Rep. 152), but even there the discussion of the question which arises here was not material to the decision, for a judgment had actually been pronounced against the defendant after the verdict. The defendant was indicted under section 5511 of the Revised Statutes of the United States for voting at an election for a representative in Congress without having a lawful right to do so. The Constitution of the state of Oregon declares that "the privilege of an elector shall be forfeited by a conviction of any crime which is punishable by imprisonment in the penitentiary." The defendant had previously been indicted and tried in a state court for an assault with a dangerous weapon, which crime was punishable by imprisonment in the penitentiary, or by a fine, in the discretion of the court. He had pleaded guilty and was sentenced to pay a fine. It was contended that inasmuch as he was only fined instead of being sentenced to imprisonment in a penitentiary, there was no such conviction as to disfranchise him under the constitutional provision which has been quoted. The Circuit Court of the United States, nevertheless, held that the test of disqualification was whether the crime of which the

defendant had been found guilty was punishable by imprisonment in the penitentiary, and that the liability to such punishment, and not the punishment actually inflicted, was the circumstance which controlled the effect of the conviction. In the opinion of Deady, J., there is an elaborate discussion of the question whether the conviction of a crime includes the judgment or sentence of the court imposing the punishment prescribed therefor, and this view is pronounced by the learned judge to be "altogether a mistake." That the consideration of that question, however, was wholly unnecessary appears from the following statement near the close of the opinion: "Even if it were conceded that the term ' conviction ' is used in the Constitution in the sense of or so as to include the sentence of the court, still the conclusion would be the same. It would nevertheless be true that the defendant was convicted of and sentenced for a crime which was then punishable by law by imprisonment in the penitentiary." This conclusion rendered it of no consequence what view the court might have taken of the case if there had been no sentence at all.

For the reasons which have been given I think that the duty to disfranchise a person convicted of bribery or any infamous crime imposed by the Constitution upon the legislature authorizes such disfranchisement only upon a conviction in the more comprehensive sense of that term, that is to say, upon a judgment based on a verdict of guilty, and that a person is not convicted within the meaning of the Constitution or the statutes enacted in pursuance thereof against whom sentence has been suspended after verdict. It follows that the order of the Appellate Division should be reversed and the judgment of the Court of General Sessions, allowing the demurrer to the indictment, should be affirmed.

Cullen, Ch. J., Haight, Vann, Werner, Hiscock and Chase, JJ., concur.

Ordered accordingly.