THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* PATSY LA SASSO, Defendant.

County Court, Kings County, September 28, 1943.

*Sidney L. Aronson* for defendant.

*Thomas Cradock Hughes, Acting District Attorney (Edward H. Levine* of counsel), for plaintiff.

LEIBOWITZ, J. Patsy La Sasso, above-named, a prisoner in State prison, serving a sentence of fifteen to thirty years as a second felony offender, asserts that this sentence is illegal. He moves to vacate the said sentence and asks to be resentenced as a first offender.

This court has the power to resentence him if the sentence originally imposed is found to be illegal, even though he has already commenced serving such illegal sentence. (*People* v. *Cohn,* 252 App. Div. 910.)

La Sasso, by the verdict of a jury, was found guilty of grand larceny in the second degree, which is a felony. After having been duly certified as a mental defective, he was, on December 3, 1934, committed by the County Court of Kings County to the Institution for Male Defective Delinquents at Napanoch, herein referred to as Napanoch. He was paroled from that institution in 1939.

On March 31, 1941, in this court, he pleaded guilty to robbery in the second degree, which is a felony. Thereafter, pursuant to section 1943 of the Penal Law, an information was filed by the District Attorney setting forth his prior commitment to Napanoch. He admitted identity and was therefore adjudged a second felony offender. Under the provisions of section 1941 of the Penal Law he was, on May 2, 1941, sentenced to State prison for a term of fifteen to thirty years. This sentence La Sasso now seeks to invalidate.

The problem presented by this application is whether one who has been committed to Napanoch, after having been found guilty of a felony, is to be regarded as a second felony offender under the provisions of section 1941 of the Penal Law if he is thereafter convicted of another felony.

On two occasions courts having concurrent jurisdiction with this court have held that a Napanoch commitment does not constitute a judgment of conviction so as to bring the offender within the second-offender rule should he thereafter be again convicted of a felony. (*People* v. *Miceli,* 179 Misc. 705; *People* v. *Eckert,* 179 Misc. 181.)

This court is not in accord with the reasoning in the *Miceli* and *Eckert* cases (*supra*). No court of appellate jurisdiction has passed upon the question.

Section 1941 of the Penal Law, in its appropriate part, reads as follows: " A person, who, after having been once or twice convicted within this state, of a felony, of an attempt to commit a felony, or, under the laws of any other state, government, or country, of a crime which, if committed within this state, would be a felony, commits any felony, within this state, is punishable upon conviction of such second or third offense, as follows * * * ". Added punishment is then prescribed.

By the foregoing statute the Legislature intended that a person convicted of more than one felony shall receive increased punishment. The prior conviction is merely used as a fact in the past history of the criminal, and the accused is not being punished again for his first offense. (*People* v. *Bergman,* 176 App. Div. 318, appeal dismissed 220 N. Y. 704; *The People* v. *Raymond,* 96 N. Y. 38.) " The punishment for the second offense is increased because of his apparent persistence in the perpetration of crime and his indifference to the laws which keep society together; he needs to be restrained by severer penalties than if it were his first offense ", wrote Crane, J., in *People* v. *Gowasky* (244 N. Y. 451, 460).

Even a pardon by the Governor for a previous offense does not enable a defendant to escape the effect of the provisions of section 1941 of the Penal Law. (*People* v. *Carlesi,* 154 App. Div. 481, affd. on opinion below 208 N. Y. 547, affd. *sub nom Carlesi* v. *New York,* 233 U. S. 51. See, also, *People* v. *Van Zile,* 80 Misc. 329; *People ex rel. Malstrom* v. *Kaiser,* 135 Misc. 67, affd. on opinion below 228 App. Div. 743.)

With the manifest purpose and intent of the Legislature in mind, we now approach consideration of the problem presented by this application.

It should be noted that, although section 1941 of the Penal Law provides increased punishment where the offender has heretofore been " once or twice convicted * * * of a felony * * * ", it contains no specification that he must have been committed to any particular institution in order to make the provisions of this section operative. Were it the intention of the Legislature to limit the application of this statute only to those sentenced to a State prison, penitentiary, or reformatory, and to exclude therefrom those committed to Napanoch, express provision therefor could easily have been made.

What is a conviction? The words " convicted " and " conviction " have been the subject of construction in many decisions both in this State and in other jurisdictions. The word " conviction " has been defined by the Court of Appeals of this State in *People* v. *Fabian* (192 N. Y. 443). Judge BARTLETT, at page 452, wrote: " As to the numerous cases cited in the briefs of both parties to the present appeal, in which the words ' conviction ' and ' convicted ' are differently defined, it may be said generally that where the context of the statute refers to the successive steps in a criminal case, or any particular stage of such a prosecution as distinguished from the others, these words apply simply and solely to the verdict of guilty; but where the reference is to the ascertainment of guilt in another proceeding in its bearing upon the status or rights of the individual in a subsequent case, then a broader meaning attaches to the expressions, and a ' conviction ' is not established or a person deemed to have been ' convicted ' unless it is shown that a judgment has been pronounced upon the verdict." At page 451 of *People* v. *Fabian* (*supra*) Judge BARTLETT quotes with approval the following from *Commonwealth* v. *Kiley* (150 Mass. 325): " We are of opinion that nothing less than a final judgment, conclusively establishing guilt, will satisfy the meaning of the word ' conviction ' as here used. At any time before the final judgment of the court a motion in arrest of judgment may be made, or the verdict may be set aside upon a motion for a new trial, on the ground of newly discovered evidence, or for other good cause; and, upon further proceedings, it may turn out that the defendant is not guilty." (See, also, *Blaufus* v. *People,* 69 N. Y. 107; *People* v. *Marendi,* 213 N. Y. 600.)

The word " judgment " has also been held to be synonymous with the word " sentence ". (*People* v. *Canepi,* 181 N. Y. 398; *People* v. *Lee Foon,* 250 App. Div. 616, revd. on other grounds 275 N. Y. 229.)

Applying the test set forth in the *Fabian* case (*supra*), the conclusion is irresistible that a commitment to Napanoch after a verdict or plea of guilty to a felony constitutes a judgment of conviction.

The judgment of the court in a criminal case serves two functions. First, it makes a judicial determination of guilt, based either upon the verdict rendered by the jury or a plea of guilty; and secondly, it imposes the penalty for the transgression.

Some jurisdictions require an express finding of guilt by the court and refuse to hold that a finding of guilt may be implied. (*White* v. *The State*, 18 Ala. App. 50.) However, in this State the courts have held that the sentence, as entered in the minutes of the court, impliedly becomes the judgment of conviction; therefore, the sentence denotes that there has been a judicial finding of guilt. (*People* v. *Bradner*, 107 N. Y. 1; *People* v. *Canepi*, 181 N. Y. 398, *supra*.)

The question now arises whether a commitment to Napanoch is a sentence. The words "commitment" and "sentence" are synonymous when they denote imprisonment as punishment for crime *after* judicial declaration of guilt.

Napanoch is a penal institution under the supervision of the Commissioner of Correction. (Correction Law, §§ 430–447.) This is emphasized by section 445 of the Correction Law, which specifically provides that "An inmate shall not be paroled before he might have been paroled from another institution, if any, to which he was originally committed or before he would have been paroled if he had been committed to a reformatory or correctional institution under a similar charge." Mental defective inmates are segregated from the general prison population of the State and confined to Napanoch because of their mental conditions so as to obtain experienced care and treatment for the welfare of the individual as well as society. (Correction Law, § 430; *People ex rel. Romano* v. *Thayer*, 229 App. Div. 687.)

Prior to 1931 a commitment to Napanoch would under certain circumstances be deemed not to be a final judgment. As the statute then read, any mental defective over sixteen years of age who was "charged with, arraigned for or convicted of a criminal offense" could be committed to Napanoch. (Correction Law, § 438, formerly numbered 468, added by L. 1927, ch. 426; formerly Mental Deficiency Law, § 24-b, as added by L. 1921, ch. 483.) Thus, if a person coming within that classification was committed in advance of trial it was obviously not by a judgment of conviction. (*People ex rel. Meyers* v. *Lawes*,

242 App. Div. 647.) But, since July 1, 1931, notwithstanding subsequent amendments (L. 1934, chs. 150, 267; L. 1939, ch. 372), no commitment of a person over the age of sixteen years can be made by any court to a State institution for defective delinquents in the absence of a *conviction*. (L. 1931, ch. 459, amdg. Correction Law, § 438.)

La Sasso's commitment to Napanoch was pursuant to section 438 of the Correction Law (as amd. by L. 1931, ch. 459), the pertinent part of which reads as follows: " A male mental defective over sixteen years of age, *convicted* of a criminal offense may be committed to the state institution for defective delinquents at Napanoch, upon a certificate of mental defect by two qualified examiners, or a qualified examiner and a qualified psychologist, made after an examination by them of the alleged mental defective." (Italics supplied.)

The fact is that he was found guilty by a jury in 1934. Consequently, his commitment to Napanoch was pursuant to a judgment of the County Court as distinguished from a commitment in advance of trial.

Section 438 of the Correction Law also provides that " Commitment to said institution at Napanoch by a court of competent jurisdiction shall be deemed a final disposition of the indictment or criminal offense charged and shall wholly divest the said court of its jurisdiction over the prisoner under said commitment and by reason of said offense, except as hereinafter otherwise provided by section four hundred forty-two." (As added by L. 1934, ch. 267, eff. April 23, 1934.)

Section 442 of the Correction Law provides, among other things, that where the commitment to Napanoch is made by the court, the Commissioner of Correction may direct the return of the prisoner to the court from which he was committed if it be found that his confinement at Napanoch is unsuitable. The purpose of this section is to afford the Commissioner of Correction an opportunity to review the certifications of the physicians upon which the commitment to Napanoch was made by the court. This does not therefore remove such commitment from the category of a sentence. For example, Elmira Reformatory accepts male inmates between the ages of sixteen and thirty years. (Penal Law, § 2185.) Were a court to commit one who is under or over the prescribed age to Elmira, the superintendent thereof would be required to return the prisoner to the court from which he was sentenced. The rejection of such prisoner by the superintendent would not therefore affect the status as convicted felons of those properly

sentenced to Elmira Reformatory. Therefore, the provisions of section 442 of the Correction Law, which give the Commissioner of Correction the power, and impose upon him the duty, to correct any error that may have·been made by the examining physicians prior to commitment to Napanoch, do not change the status of those inmates accepted at Napanoch as convicted felons or misdemeanants.

Provision is made by the Correction Law for the transfer of felons and misdemeanants from State prisons, reformatories, or penitentiaries to Napanoch where it is found that the prisoners are mental· defectives. A transferee. may thereafter be confined at Napanoch until the full term of the sentence originally imposed has been completed; and upon a proper showing by the Commissioner of Correction that he is still a mental defective he may continue to be confined at Napanoch for the rest of his natural life. (Correction Law, §§ 438-a, 439, 440.) Clearly, a prisoner transferred from State prison to Napanoch, if he should thereafter commit a crime which is a felony, would, under the provisions of section 1941 of the Penal Law, be deemed to be a second felony offender. (*People ex rel. Ryan* v. *Murphy,* 255 App. Div. 748.)

In the *Ryan* case (*supra*) the prisoner was sentenced to Elmira Reformatory for the crime of assault in the second degree. While confined at Elmira he was examined by a physician attached to that institution and was found to be a mental defective. He was transferred to Napanoch, where he remained for a period of time, and was then released on parole. Subsequently he committed three other felonies. He was last sentenced to a term of life imprisonment as a fourth offender. The prisoner contended that because of such transfer to Napanoch he was not amenable to the added punishment provided by section 1942 of the Penal Law. The court, holding otherwise, wrote at page 749: " If the appellant's contention was to receive the approval of this court, then·all weak-minded second offenders are free to commit crimes with impunity."

There is, therefore, no valid basis for distinction between the case of one *originally* committed by the court to Napanoch and one transferred to Napanoch *after* his mental deficiency has been discovered upon arrival at a State prison, reformatory, or penitentiary.

For the foregoing reasons this court is constrained to hold that the applicant herein is a second felony offender. The sentence of fifteen to thirty years imposed is legal. The application herein must be denied.