[No. A114988. First Dist., Div. One. Dec. 21, 2006.]

LEAGUE OF WOMEN VOTERS OF CALIFORNIA et al., Petitioners, v. BRUCE McPHERSON, as Secretary of State, etc., et al., Respondents.

**COUNSEL**

Maya L. Harris, Margaret C. Crosby, Brian A. Lambert, Anupama K. Menon; and Peter Sheehan for Petitioners.

Bill Lockyer, Attorney General, Stacy Boulware Eurie, Assistant Attorney General, Jonathan K. Renner and Leslie R. Lopez, Deputy Attorneys General, for Respondent Bruce McPherson.

Dennis J. Herrera, City Attorney, Wayne Snodgrass, Chad Jacobs and Ann M. O'Leary, Deputy City Attorneys, for Respondent John Arntz.

**OPINION**

**STEIN, J.**—This is a proceeding for writ of mandate brought by three nonprofit organizations with interests in voting rights, prisoner rights, or both, and three individuals confined in local facilities as a condition of felony probation. Petitioners seek an order compelling the Secretary of State and the San Francisco Director of Elections to accept affidavits of registration to vote from all individuals, otherwise qualified to vote, who are confined in local jails pursuant to a sentence imposed under Penal Code sections 17 and 18 or as a condition of felony probation, and to perform all ministerial tasks necessary to ensure that these individuals are duly registered and able to vote in future elections.

This case falls within the limited category where an appellate court properly exercises original jurisdiction. (*Jolicoeur v. Mihaly* (1971) 5 Cal.3d 565, 570, fns. 1 & 2 [96 Cal.Rptr. 697, 488 P.2d 1].) It concerns the meaning of article II, section 4 of California's Constitution: "The Legislature shall prohibit improper practices that affect elections and ·*shall provide for the disqualification of electors while* mentally incompetent *or imprisoned or on parole for the conviction of a felony.*" (Italics added.) For many years the Secretary of State took the position that the emphasized language disenfranchises only persons who, as a result of a felony conviction, are serving a

sentence in state prison or are on parole from a felony conviction.[1] In December 2005, however, after requesting and receiving an opinion from the Attorney General on the question, the Secretary of State took the opposite position. The Secretary of State notified local officials, including the Director of San Francisco's Department of Elections, that the constitutional provision also applies to persons incarcerated in a local detention facility for the conviction of a felony, including persons serving that term as a condition of probation. (Secretary of State Bruce McPherson, letter to all county clerks/registrars of voters, Dec. 28, 2005.)

Petitioners maintain that the construction of article II, section 4 of the California Constitution adopted by the Attorney General and the Secretary of State is overbroad. In their view, section 4 of the California Constitution does not disenfranchise persons confined in a local facility as a condition of felony probation or sentenced under Penal Code sections 17 and 18 to anything other than imprisonment in state prison.[2] Respondent John Arntz, Director of San Francisco's Department of Elections, points out that there are sound administrative reasons for adopting petitioners' interpretation. He asserts, however, that he and other elections officials lack the power and means to determine whether any particular person is or is not entitled to register to vote, relying on lists of persons provided by the clerks of the state's superior courts. He therefore requests that in lieu of directing county elections officials to accept the applications of persons entitled to vote, we direct the Secretary

---

[1] For example:

In 1976, two years after article II, section 4 was adopted, the Secretary of State explained to the state's county clerks and registrars of voters, "[A]ny convicted felon who is presently in State prison or on parole is not eligible to register or vote regardless of the felony involved. (Do not confuse 'probation' with 'parole'. A person on probation _may_ register to vote.)" (Secretary of State March Fong Eu, letter to county clerks and registrars of voters, Apr. 30, 1976.)

In 1979 the Secretary of State, interpreting this court's opinion in _Flood v. Riggs_ (1978) 80 Cal.App.3d 138 [145 Cal.Rptr. 573] (_Flood_) (discussed _post_), wrote to the Fairfield Elections Supervisor that the constitutional provision "does not [disenfranchise] a person convicted of a felony and who is on probation. It speaks only to those felons imprisoned or undergoing an unexpired term of parole. The Secretary of State has also taken the position that the conviction must be for a felony which results in confinement in a state prison. Therefore, persons convicted of a felony but . . . sent to the county jail are not ineligible to register to vote." (Secretary of State March Fong Eu, letter to Elections Supervisor Mary Widger, May 29, 1979.)

In 2004, the Secretary of State responded to an inquiry from San Francisco's Legal Services for Prisoners with Children that "it is the law and therefore the position of the Secretary of State, that only those persons who are in prison or on parole for the conviction of a felony may be disqualified as electors." (Secretary of State Kevin Shelley, letter to Program Director Dorsey E. Nunn and Staff Attorney Cassie M. Pierson, Nov. 5, 2004.)

[2] Petitioners concede that article II, section 4 of the California Constitution applies to persons sentenced to a term in state prison who serve that term in county jail under contract between state and local officials.

of State to notify the clerks of the superior courts of this court's interpretation of article II, so that they will limit the names on their lists to conform to that interpretation.

We agree that article II, section 4, of the California Constitution does not apply to persons on felony probation. Where the court suspends imposition of sentence and places a defendant on probation, the defendant has not suffered a conviction for purposes of article II, section 4 of the California Constitution. In addition, where a probationer is ordered to serve time in a local facility because either imposition or execution of sentence has been suspended, he or she has not been imprisoned for the conviction of a felony, but has been confined as a condition of probation. Finally, where by virtue of Penal Code section 18, a felony offense is punishable by fine or imprisonment in county jail, and the trial court, pursuant to Penal Code section 17, subdivision (b)(1), enters judgment imposing something other than imprisonment in state prison, the crime is a misdemeanor for purposes of article II, section 4. We therefore grant the relief requested by petitioners, as modified by the request of John Arntz, and direct the Secretary of State to inform the state's county clerks, superior court clerks and registrars of voters, that article II, section 4 disenfranchises only persons imprisoned in state prison or on parole for the conviction of a felony.

## BACKGROUND

The first California Constitution, adopted in 1849, permanently disenfranchised all persons "convicted of any infamous crime." (Cal. Const. of 1849, art. II, § 5, adopted in Cal. Const. of 1879 as art. II, § 1.)[3] As this court recognized in *Truchon v. Toomey* (1953) 116 Cal.App.2d 736 [254 P.2d 638] (*Truchon*), the term "conviction" does not have a fixed meaning. It could be, and has been, interpreted narrowly as the *fact* of conviction; i.e., the return of a verdict of guilt, such as when a conviction triggers the power of the governor to pardon. It also could be, and has been, interpreted to apply only to those proceedings which have been finally completed. (*Id.* at pp. 740–744.) New York had interpreted the term in its most comprehensive sense (i.e., to require both a verdict and a final judgment) in connection with its own constitutional provision directing the legislature to " 'enact laws excluding from the right of suffrage all persons convicted of . . . any infamous crime.' " (*People v. Fabian* (1908) 192 N.Y. 443, 446, 453 [85 N.E. 672, 673, 676].) This court, agreeing with the reasoning of the New York court, concluded that a broad interpretation is called for when disabilities such as disenfranchisement result from a conviction. It reasoned, further, that the people of California must have been of similar mind to the people of New York "when

---

[3] Hereafter, all references to article II are to the California Constitution.

they placed in the Constitution of 1849 practically the same provision." (*Truchon, supra,* at p. 744.)

Six years after *Truchon,* the California Supreme Court, in *Stephens v. Toomey* (1959) 51 Cal.2d 864 [338 P.2d 182], agreed that persons against whom a verdict of guilt has been entered, but *imposition* of sentence suspended, have not been "convicted" and thereby disenfranchised. (*Id.* at pp. 871, 874.) The court held that where judgment is entered, but *execution* of sentence is suspended, the defendant has suffered a conviction even though the judgment is provisional or conditional in nature. (*Id.* at pp. 870–871.) As at that time the constitutional prohibition attached upon conviction, the defendant, who had been convicted with execution of sentence suspended, was subject to it. If, however, he successfully completed probation, the proceedings were expunged from the record, and the case were to be dismissed, "[i]t is assumed that he will at that time be entitled to the relief he now seeks. But that time has not arrived and the petition is therefore premature." (*Id.* at p. 875.)

In 1960, the Legislature sought to amend article II, section 1 to substitute the term "felony" for the term "infamous crime," and to restore the right to vote to most individuals convicted of a felony when they had paid the penalties imposed by law. (Assem. Const. Amend. No. 5 (1960 Reg. Sess.), appearing on the Nov. 8, 1960 ballot as Prop. 8.) The proposed amendment also addressed the situation of those on probation, providing for disenfranchising all persons " 'while paying the penalties imposed by law, including any period of probation or parole.' " (*Ibid.*) Proposition 8 was not passed by the voters and the proposed amendment was never adopted. A decade later, the 1970 California Constitution Revision Commission recommended changes to a number of constitutional provisions affecting voters. Among them was a revision that would clarify that the disqualification of felons would apply while the person "is actually under sentence, or other court order." The Commission explained, " 'Under court order' was used rather than 'under sentence' because there are certain limited circumstances in which a court disposition after conviction is not technically a sentence" (Cal. Const. Revision Com., Proposed Revision (1970) p. 18), presumably recognizing that the existing constitutional provision did not disenfranchise persons on court-ordered probation. The Legislature did not follow the recommendation, but in 1972 placed a proposition before the voters to repeal article II, section 1, replacing it with a new article II, section 3. The new section recited: "[T]he legislature shall prohibit improper practices that affect elections and shall provide that no severely mentally deficient person, insane person, person convicted of an infamous crime, nor person convicted of embezzlement or misappropriation of public money shall exercise the privileges of an elector in this State." (Prop. 7 for the Nov. 7, 1972 election.) The

proposition passed, and the phrase "convicted of an infamous crime" therefore continued to describe those among the disenfranchised. Persons merely "under court order," but not "under sentence," retained their voting rights.

In the meantime, the courts were grappling with the meaning of the phrase "infamous crime." The phrase had been interpreted, judicially, to include conviction of any felony (e.g., *Truchon, supra,* 116 Cal.App.2d at p. 738). Penal Code section 2600 already denied the right to vote to all felons imprisoned in state prison,[4] and Penal Code section 3054 denied the vote to paroled persons,[5] but article II, section 1 permanently disenfranchised those who had been "convicted" of an infamous crime. In 1966, the Supreme Court decided *Otsuka v. Hite* (1966) 64 Cal.2d 596 [51 Cal.Rptr. 284, 414 P.2d 412] (*Otsuka*). To preserve article II, section 1 against equal protection challenge, the Supreme Court construed "infamous crime" to mean only crimes involving moral corruption and dishonesty. (*Otsuka,* at p. 599.) The court rejected the argument that the purpose of denying offenders the right to vote was to impose an additional punishment on them, finding instead that "[t]he manifest purpose is to preserve the purity of the ballot box, which is the only sure foundation of republican liberty, and which needs protection against the invasion of corruption, just as much as against that of ignorance, incapacity, or tyranny." (*Id.* at p. 603.) The court also found that California properly denied the right to vote to all felons actually incarcerated in state prison. (*Id.* at p. 606, fn. 5.)

In 1973, with the 1972 amendment to the Constitution before it, the Supreme Court in *Ramirez v. Brown* (1973) 9 Cal.3d 199 [107 Cal.Rptr. 137, 507 P.2d 1345] (*Ramirez*) again considered whether the Constitution permitted the state permanently to disenfranchise any person who had been convicted of an "infamous crime." Citing developments in the law of equal protection, the court concluded that the California provision violated the Fourteenth Amendment to the United States Constitution because denying the right of suffrage to all ex-felons did not provide the least restrictive method of protecting the purity of the ballot box against abuse by morally corrupt and dishonest voters. (9 Cal.3d at pp. 202, 206, 211, 217.) The court declined the

---

[4] Penal Code former section 2600 provided in relevant part, "A sentence of imprisonment in a state prison for any term suspends all the civil rights of the person so sentenced . . . during such imprisonment. But the Adult Authority may restore to said person during his imprisonment such civil rights as the authority may deem proper, except the right to . . . exercise the privilege of an elector."

[5] Penal Code former section 3054 provided in pertinent part, "The Adult Authority may permit paroled persons civil rights, other than the right to . . . exercise the privilege of an elector, during the term of such parole."

invitation to reaffirm the constitutionality of the statutes denying suffrage to all felons incarcerated or on parole, as that question was not before it. (*Id.* at p. 217, fn. 18.)[6]

The Legislature responded to the *Ramirez* decision by adopting a proposal to amend the constitutional provision (set forth in article II, section 3 by the 1972 amendment)[7] for consideration at the November 5, 1974 election (Assem. Const. Amend. No. 38 (1973–1974 Reg. Sess.). The Legislature expressed its intent to conform the laws of the state to the decision in *Ramirez, supra,* 9 Cal.3d 199, but not to "affect in any manner the existing constitutional, statutory, and decisional law of this state governing the right of suffrage of persons whose terms of imprisonment and parole for the conviction of a felony have not expired." (Assem. Bill No. 1128 (1973–1974 Reg. Sess.) § 15.) The proposal, set forth in Proposition 10, was passed at the election on November 4, 1974. The Legislature then amended section 3, later renumbered article II, section 4, to read as it does today, changing the critical phrase from "convicted of an infamous crime" to "imprisoned or on parole for the conviction of a felony." (As amended Nov. 5, 1974, renumbered art. 2,

---

[6] *Ramirez, supra,* 9 Cal.3d 199, was reversed by the United States Supreme Court in *Richardson v. Ramirez* (1974) 418 U.S. 24 [41 L.Ed.2d 551, 94 S.Ct. 2655]. It is perhaps significant that the United States Supreme Court did *not* conclude that disenfranchising all persons convicted of infamous crimes was consistent with the equal protection guarantees set forth in section 1 of the Fourteenth Amendment to the United States Constitution. It instead construed section 2 of the Fourteenth Amendment to except the disenfranchisement of felons from the protections afforded by section 1. (*Richardson v. Ramirez, supra,* at pp. 54–55.) Section 2 provides: "Representatives shall be apportioned among the several states according to their respective numbers, counting the whole number of persons in each state, excluding Indians not taxed. But when the right to vote at any election for the choice of electors for President and Vice-President of the United States, Representatives in Congress, the executive and judicial officers of a state, or the members of the legislature thereof, is denied to any of the male inhabitants of such state, being twenty-one years of age, and citizens of the United States, or in any way abridged, except for participation in rebellion or other crime, the basis of representation therein shall be reduced in the proportion which the number of such male citizens shall bear to the whole number of male citizens twenty-one years of age in such state." In brief, section 2 imposes a penalty on states that deny the vote to male citizens 21 years or older, except for those who participated in rebellion or crime, by reducing that state's congressional delegation. The Supreme Court construed the phrase so that it not only removed a class of persons from being counted in determining whether a state was subject to the penalty of subdivision 2, but also removed the same class from the protections afforded by section 1. The matter was remanded to the California Supreme Court to consider the petitioners' alternative contention, which had not previously been reached, that there was such a lack of uniformity in the enforcement of the law as to work a separate denial of equal protection. By that time, the constitutional provision in question had been repealed and replaced with the current provision. The California Supreme Court therefore dismissed the proceedings as moot. (*Ramirez v. Brown* (1974) 12 Cal.3d 912, 914 [117 Cal.Rptr. 562, 528 P.2d 378].)

[7] The Legislature also proposed to amend former article XX, section 11 of the California Constitution, which called for implementing laws to exclude specified persons from specified rights or privileges, including the right to vote.

§ 4 on June 8, 1976.) This court, in *Flood*, *supra*, 80 Cal.App.3d at p. 155, later found that article II, section 4 disenfranchised persons convicted of any felony "while serving a sentence of imprisonment or while undergoing an unexpired term of parole."[8]

The Legislature also repealed the statutes that disenfranchised persons serving a prison sentence or on parole, although this court found the repeal of those sections in no way affected the disqualification of imprisoned or paroled felons. (*Flood*, *supra*, 80 Cal.App.3d at p. 153, fn. 19.) The Legislature later enacted Elections Code section 2101, providing that persons "in prison or on parole for the conviction of a felony" are not entitled to register to vote. (See also Elec. Code, §§ 2106 & 2300.)[9] For over three decades the Secretary of State acted on the understanding that article II, section 4 applied only to persons convicted of a felony and imprisoned in state prison or on parole from state prison. As a result, the Secretary received and processed registration applications submitted by persons who had been adjudicated felons but were confined in a local facility as a condition of probation.

In November 2005 the Secretary of State requested an opinion from the state's Attorney General, asking whether "a person who is incarcerated in a local detention facility, such as a county jail, for the conviction of a felony [is] eligible to vote?" (88 Ops.Cal.Atty.Gen. 207 (2005).) The office of the Attorney General, departing from its own prior understanding of the meaning of the constitutional provision,[10] issued an opinion that the long-standing interpretation of the constitutional language was wrong.

The Attorney General concluded that article II, section 4 disenfranchises not only persons convicted of a felony while serving a sentence of imprisonment in state prison or while undergoing an unexpired term of parole, but

---

[8] As mentioned, *ante*, in footnote 1, the Secretary of State cited the opinion in *Flood*, *supra*, 80 Cal.App.3d 138, in support of the conclusion that the constitutional provision does not disenfranchise probationers. (Secretary of State March Fong Eu, letter to Elections Supervisor Mary Widger, May 29, 1979.)

[9] Elections Code section 2101 provides: "A person entitled to register to vote shall be a United States citizen, a resident of California, not in prison or on parole for the conviction of a felony, and at least 18 years of age at the time of the next election."

Elections Code section 2106 recognizes that an eligible voter must not be in prison or on parole for conviction of a felony.

Elections Code section 2300, subdivision (a)(1)(B) identifies a "valid registered voter" as "a United States citizen who is . . . not in prison or on parole for the conviction of a felony."

[10] In 1972 the Attorney General issued an opinion recognizing that " 'conviction' within the meaning of article II, section 1 of the Constitution and resulting in disenfranchisement requires both a verdict of guilty *and* the imposition of sentence pursuant to such verdict." (55 Ops.Cal.Atty.Gen. 125, 126 (1972).) The following year the Attorney General again recognized that for purposes of disenfranchisement, the word "conviction" refers to a verdict of guilt followed by a final judgment which has been affirmed on appeal. (57 Ops.Cal.Atty.Gen. 374, 377 (1974).)

also felons confined in a local jail as a condition of probation, making no distinction between cases where imposition of sentence has been suspended and those where sentence has been imposed but execution of sentence has been suspended. (88 Ops.Cal.Atty.Gen., *supra*, at p. 207.) The Attorney General reasoned that this conclusion flows from the dictionary definition of "imprisoned" in the phrase disqualifying "electors while mentally incompetent or *imprisoned or on parole for the conviction of a felony.*" Citing Webster's Third New International Dictionary (2002) page 1137, the Attorney General asserted that the term means "to put in prison: confine in a jail." (88 Ops.Cal.Atty.Gen. 207, *supra*, at p. 209.) The Attorney General noted further that although the Legislature had expressed its intent to grant the right to vote to felons after they had completed their sentences (*id.* at pp. 209–211), "[n]o indication may be found in the 1974 ballot pamphlet that the electorate intended to grant voting rights to those who were still in custody." (*Id.* at p. 211.)

On December 28, 2005, after receiving the Attorney General's opinion, the Secretary of State issued a memorandum to all county clerks and registrars of voters, explaining that county elections officials must cancel the voter registration of all persons imprisoned or on parole for the conviction of a felony. The memorandum counseled, "Where the sentence is physically served is immaterial with respect to voting eligibility, the fact of a felony conviction is what triggers the restriction on the felon's voting rights." (Secretary of State Bruce McPherson, letter to all county clerks/registrars of voters, Dec. 28, 2005, p. 1.)

Petitioners responded by filing their petition for writ of mandate.

DISCUSSION

*Confinement as a Condition of Felony Probation*

■ By focusing solely on the word "imprisoned," and on a dictionary definition of that term, the Attorney General's opinion ignored a critical distinction between the situation of persons confined to jail as a condition of felony probation and that of persons imprisoned in state prison. The former are under the jurisdiction of the court. The latter are not. The jurisdiction of the court over the defendant does not end with an adjudication of guilt, nor is the defendant imprisoned at that time as a result of a verdict or plea of guilt. The court retains jurisdiction over the defendant until it orders execution of sentence and directs that the defendant be delivered into the custody of the Director of Corrections. (Pen. Code, § 1202a; *People v. Banks* (1959) 53 Cal.2d 370, 384–385 [1 Cal.Rptr. 669, 348 P.2d 102].) Upon conviction of a felony, the court may suspend imposition or execution of sentence and order

the conditional release of the defendant under the supervision of the probation officer. (Pen. Code, § 1203, subd. (a).) Apart from the term of imprisonment in state prison that the Legislature has decreed be served for the conviction of a felony offense, the trial court has independent authority to cause a defendant who has been convicted of a felony and is eligible for probation, to be imprisoned in a local facility as a condition of probation. "The court may, in connection with granting probation, impose either imprisonment in a county jail or a fine, both, or neither." (Pen. Code, § 1203.1, subd. (a)(2).) The defendant who has been placed on probation, therefore, is imprisoned by the court in a local facility as a condition of probation, not as a result of the conviction of a felony. If a probationer violates the terms of probation, the court has the power "to reimprison the probationer in the county jail . . . ." (Pen. Code, § 1203.1, subd. (j).) In such a case, the defendant again is confined for violating the terms of his or her probation, not for the conviction of a felony. Such a defendant is imprisoned as a result of the felony conviction only if probation is revoked or terminated, the court orders imposition and/or execution of judgment and the defendant is delivered to the Department of Corrections and Rehabilitation.

■ The Attorney General's opinion also ignored decades of judicial construction without regard for the history of the constitutional provision or the purpose of the 1974 amendment. The aim of constitutional interpretation is to determine and effectuate the intent of those who enacted the constitutional provision at issue. (*Bighorn-Desert View Water Agency v. Verjil* (2006) 39 Cal.4th 205, 212 [46 Cal.Rptr.3d 73, 138 P.3d 220] (*Bighorn-Desert*); *Richmond v. Shasta Community Services Dist.* (2004) 32 Cal.4th 409, 418 [9 Cal.Rptr.3d 121, 83 P.3d 518] (*Richmond*); *Thompson v. Department of Corrections* (2001) 25 Cal.4th 117, 122 [105 Cal.Rptr.2d 46, 18 P.3d 1198].) When the constitutional provision was enacted by initiative, the intent of the voters is the paramount consideration. (*Davis v. City of Berkeley* (1990) 51 Cal.3d 227, 234 [272 Cal.Rptr. 139, 794 P.2d 897].) To determine the voters' intent, courts look first to the constitutional text, giving words their ordinary meanings. (*Bighorn-Desert, supra,* at p. 212; *Richmond, supra,* at p. 418.) But where a provision in the Constitution is ambiguous, a court ordinarily must adopt that interpretation which carries out the intent and objective of the drafters of the provision and the people by whose vote it was enacted. (*Mosk v. Superior Court* (1979) 25 Cal.3d 474, 495 [159 Cal.Rptr. 494, 601 P.2d 1030], superseded on other grounds in *Adams v. Commission on Judicial Performance* (1994) 8 Cal.4th 630, 650 [34 Cal.Rptr.2d 641, 882 P.2d 358].) New provisions of the Constitution must be considered with reference to the situation intended to be remedied or provided for. (*The Recorder v. Commission on Judicial Performance* (1999) 72 Cal.App.4th 258, 269 [85 Cal.Rptr.2d 56]; *In re Quinn* (1973) 35 Cal.App.3d 473, 483 [110 Cal.Rptr. 881].)

The phrase "imprisoned or on parole for the conviction of a felony," as it appears in article II, section 4, is ambiguous. Before the amendment, the critical question had been whether the defendant had been *convicted.* As discussed above, the term "conviction," for purposes of disenfranchisement of felons, long had been construed to mean *judgment* of conviction.[11] "The enacting body is deemed to be aware of existing laws and judicial constructions in effect at the time legislation is enacted. [Citation.] This principle applies to legislation enacted by initiative. [Citation.]" (*People v. Weidert* (1985) 39 Cal.3d 836, 844 [218 Cal.Rptr. 57, 705 P.2d 380].) It follows that unless the voters intended to impose a new construction on the term "conviction," article II, section 4 should not be construed to apply to persons placed on probation without imposition of sentence, for the simple reason that those persons have not been convicted of a felony. Moreover, in the absence of any clear intent by the Legislature or the voters, we apply the principle that " '[t]he exercise of the franchise is one of the most important functions of good citizenship, and no construction of an election law should be indulged that would disenfranchise any voter if the law is reasonably susceptible of any other meaning.' " (*Otsuka, supra,* 64 Cal.2d at pp. 603–604.)

In addition, where, under earlier versions, it was enough that the defendant had been convicted of an "infamous crime," article II, section 4 requires both a conviction of a felony *and* that the defendant be imprisoned or on parole as a result of the conviction. Accordingly, while the Secretary of State asserts that in adopting article II, section 4, the electorate sought to punish persons with felony status, the constitutional provision does no such thing. The majority of persons on felony probation are not incarcerated in any facility, even if they suffer some period of confinement as a condition of probation. The constitutional provision does not affect them even under the Secretary of State's interpretation. Moreover, nothing in the legislative and ballot materials indicates an intent to disenfranchise persons who were entitled to vote at the time Proposition 10 was placed before the voters.

While the legislative and ballot materials do not indicate an intent to disenfranchise probationers, there are positive indications of an intent *not* to disenfranchise them. After the decision in *Ramirez, supra,* 9 Cal.3d 199, the only persons disqualified from voting were those disqualified by statute: persons serving a prison sentence for the conviction of a felony and persons on parole. The Legislature placed Proposition 10 before the electorate on

---

[11] The same construction of the term is recognized in other laws, including those adopted by initiative. For example, on November 7, 2000, the voters approved Proposition 36, which effected a change in the sentencing law so that a defendant convicted of a nonviolent drug possession offense generally is sentenced to probation instead of state prison or county jail. Proposition 36 applies to defendants convicted on or after July 1, 2001. For those purposes, "conviction" means adjudication of guilt and the judgment thereon. (*In re DeLong* (2001) 93 Cal.App.4th 562, 564, 570 [113 Cal.Rptr.2d 385].)

November 4, 1974, to conform the laws of the state to the decision in *Ramirez,* but not to "affect in any manner the existing constitutional, statutory, and decisional law of this state governing the right of suffrage of persons whose terms of imprisonment and parole for the conviction of a felony have not expired." (Assem. Bill No. 1128 (1973–1974 Reg. Sess.) § 15.)[12] The Legislature had considered, but did not propose, language that would have extended the disqualification to persons while "under court order," apparently referring to persons on felony probation. (See Assem. Const. Amend. No. 38 (1973–1974 Reg. Sess.).) The voters were informed by the Legislative Analyst that the Constitution at that time did not "allow the Legislature to restore the vote to convicted felons 'when their prison sentences, including time on parole, have been completed.' " The argument in favor of the proposition emphasized the importance of the right to vote, pointed out that existing law was being applied in an inconsistent manner (presumably referring to different interpretations of what constituted an "infamous crime"), maintained there was no need to restrict the right to vote as a means of protecting the integrity of the ballot box and asserted that denying ex-felons the right to vote punished them unfairly and deterred their reintegration into society. The argument against the proposition emphasized the deterrent effect of permanently denying felons the right to vote.

The Legislature then placed Proposition 10 before the voters to enable them to restore a right to vote that did not then exist. By voting in favor of Proposition 10, the voters expressed an intent to restore that right. To construe article II, section 4 to take away an existing right to vote—the right enjoyed by persons who have been found or have pleaded guilty of a felony but who have not been sentenced to prison—would be inconsistent with the intent of both those who drafted the amendment and those who approved it. Similarly, after the decision in *Ramirez, supra,* 9 Cal.3d 199, persons on probation following suspension of execution of sentence were entitled to vote. Again, in voting in favor of Proposition 10, the electorate sought to increase the class of persons entitled to vote, not to decrease it.

■ There are additional reasons for adopting petitioners' construction. A finding that article II, section 4 applies only to those in state prison or on parole is consistent with the use of the term "parole" in the disenfranchising phrase. Only persons who have been sentenced to a term in state prison can be "on parole for the conviction of a felony." A finding that article II, section 4 applies only to those in state prison or on parole from state prison also is

---

[12] Assembly Bill No. 1128 (1973–1974 Reg. Sess.), which expressed the legislative intent and was adopted by the Legislature, amended portions of the Elections Code to clarify the regulatory election process. The Governor later vetoed the bill, but it nonetheless provides some "impression" of the Legislature's intended meaning. (*Flood, supra,* 80 Cal.App.3d at pp. 152–153.)

consistent with the language of the Elections Code, which, as mentioned above, provides that persons *"in prison* or on parole for the conviction of a felony" are not entitled to register to vote. (Elec. Code, § 2106, italics added; see § 2300.) "[I]t is well settled that when the Legislature is charged with implementing an unclear constitutional provision, the Legislature's interpretation of the measure deserves great deference. [Citations.]" (*People v. Birkett* (1999) 21 Cal.4th 226, 244 [87 Cal.Rptr.2d 205, 980 P.2d 912].) Furthermore, it is not uncommon for probation to be revoked summarily, and a probationer thereby confined, pending a hearing on whether the probationer has in fact violated a condition of probation. The probationer may post bail and be released from confinement pending a revocation hearing. Even if the court later determines that probation was violated, it retains the power to restore probation, but may impose a new condition of confinement. A conclusion that the probationer was qualified to vote during any periods of freedom from confinement, but disqualified during any period where he or she actually was confined, would impose an impossible burden on the court and county clerks and elections officials.

■ Finally, a finding that the phrase refers only to those imprisoned in state prison or on parole is not inconsistent with the ordinary meaning of the term "imprisoned." The Attorney General's 2005 opinion itself recognized that the term could mean confinement in any facility, or it could be limited to mean only confinement in a prison, such as state prison. As the Attorney General pointed out, one definition of the term in Webster's Third New International Dictionary is "to put in prison: confine in a jail." (88 Ops.Cal.Atty.Gen., *supra*, at p. 207.) Nonetheless, the same dictionary defines "prison" several ways, including as "an institution for the imprisonment of persons convicted of major crimes or felonies: a penitentiary as distinguished from a reformatory, local jail, or detention home." The term "imprisonment" has no fixed meaning in practice. For example, Penal Code section 19 provides that a misdemeanor is "punishable by imprisonment in the county jail not exceeding six months." But it also has been held that serving a probationary period in the county jail does not amount to serving a term of imprisonment in a penal institution. (*People v. Wallach* (1935) 8 Cal.App.2d 129, 133 [47 P.2d 1071].) In short, there is no "ordinary meaning" of the term that would be violated by limiting it to confinement in state prison for purposes of article II, section 4.

■ For all of the above reasons, we conclude that article II, section 4 does not disenfranchise persons who by plea or verdict have been adjudicated guilty of a felony, but who are on probation under the jurisdiction of the court after the court has suspended imposition or execution of sentence.

*Sentencing Under Penal Code Sections 18 and 17, Subdivision (b)*

■ The remaining question is the effect of the constitutional provision on persons convicted of a felony, but sentenced to a term in county jail. The question arises because of the discretion given the courts in connection with "wobblers"; i.e., crimes punishable either as felonies or as misdemeanors. Penal Code section 18 provides, "every offense which is prescribed by any law of the state to be a felony punishable by imprisonment in any of the state prisons or by a fine, but without an alternate sentence to the county jail, may be punishable by imprisonment in the county jail not exceeding one year or by a fine, or by both." Penal Code section 18, therefore, confers discretion on the trial courts to sentence adjudicated felons to something other than a term in state prison. Penal Code section 17, subdivision (b) provides in relevant part, "When a crime is punishable, in the discretion of the court, by imprisonment in the state prison or by fine or imprisonment in the county jail, it is a misdemeanor for all purposes under the following circumstances: [¶] (1) After a judgment imposing a punishment other than imprisonment in the state prison."

■ The Secretary of State concedes that once the court exercises its discretion under Penal Code section 17, subdivision (b), and imposes a punishment other than imprisonment in state prison, the crime in question is deemed a misdemeanor and article II, section 4 does not affect the defendant's right to vote. The Secretary of State contends, however, that until the court actually imposes sentence, the crime remains a felony. The contention is correct. Where an offense is punishable by imprisonment in state prison, but also is punishable, in the alternative, by a county jail sentence, "its status can be changed only by 'a judgment imposing a punishment other than imprisonment in the state prison.' [Citations.] . . . 'The necessary inference to be drawn from the language of section 17 of the Penal Code [is] that "when a crime [is] punishable by fine or imprisonment in a county jail, in the discretion of the court, it shall be deemed a misdemeanor for all purposes *after a judgment imposing a punishment other than imprisonment in the state prison,*" [and] *the offense remains a felony* except when the discretion is actually exercised and the prisoner is punished only by a fine or imprisonment in a county jail.' " (*People v. Williams* (1945) 27 Cal.2d 220, 228–229 [163 P.2d 692], original italics.) As a result, where the court suspends imposition of sentence and places the defendant on probation, the crime is a felony. However, because the court has suspended imposition of sentence, the defendant has not been convicted for purposes of article II, section 4, and the defendant, accordingly, is entitled to vote. In addition, because the defendant is on probation under the jurisdiction of the court, the defendant is not imprisoned as the result of a felony conviction, and for that separate reason again is entitled to vote.

## Disposition

Let the peremptory writ of mandate issue directing respondent, the Secretary of State, to issue a memorandum informing the county clerks and elections officials that the only persons disqualified from voting by reason of article II, section 4 are those who have been imprisoned in state prison or who are on parole as a result of the conviction of a felony.

In order to ensure timely implementation of this decision, absent further order of this court, this opinion will be final as to this court on January 10, 2007. (Cal. Rules of Court, rule 24(b)(3).)

Marchiano, P. J., and Swager, J., concurred.